## RESIDENTIAL LEASE AGREEMENT

| PROPERTY MANAGEMENT INFORMATION | |
|---|---|
| **Property Manager Phone Number Address** | Progress Residential Management Services, LLC<br>(404) 596-8381<br>2658 Holcomb Bridge Rd Suite 118, Alpharetta, Ga 30022 |
| **Website for Rent Payments** | https://rentprogress.securecafe.com/residentservices/apartmentsforrent/userlogin.aspx |
| **Landlord** | Progress Residential Borrower 17, LLC |

| RESIDENTS AND GUARANTOR INFORMATION | | | |
|---|---|---|---|
| **Resident 1** | Erica Crawford | **Resident's Phone No.**<br>**Resident's Email** | crawfordberica@gmail.com |
| **Resident 2** | Skylar Bass | **Resident's Phone No.**<br>**Resident's Email** | |
| **Resident 3** | | **Resident's Phone No.**<br>**Resident's' Email** | |
| **Resident 4** | | **Resident's Phone No.**<br>**Resident's' Email** | |
| **Resident 5** | | **Resident's Phone No.**<br>**Resident's' Email** | |
| **Resident 6** | | **Resident's Phone No.**<br>**Resident's Email** | |
| **Resident 7** | | **Resident's Phone No.**<br>**Resident's Email** | |
| **Occupant** | Name: Carleigh Crawford<br>Name: Ethan Crawford<br>Name: Michael Crawford<br>Name:<br>Name:<br>Name: | | |
| **Guarantor 1** | Name<br>Address<br>Phone Number:<br>Guarantor Email: | | |
| **Guarantor 2** | Name<br>Address<br>Phone Number:<br>Guarantor Email: | | |



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

| LEASED PREMISES INFORMATION | | | |
|---|---|---|---|
| **Community** | | **Address of Leased Premises** | 1456 Arbor Pl Dr Morrow, GA 30260 |
| **LEASE DEFINED TERMS** | | | |
| **Lease Start Date** | 06/20/2025 | **Pets allowed:**<br>**Pet 1**<br>**Pet 2**<br>**Pet 3**<br>**Verified Service or ESA**<br>**Verified Service or ESA**<br>**Verified Service or ESA** | Dog - Cooper<br>-<br>-<br>-<br>-<br>- |
| **Lease End Date** | **06/21/2026** | | |
| **Month-to-Month Extension Fee** | 120% of market Rent | **Monthly Pet Rent (All States Except Colorado)** | One pet $72 per month<br>Two pets $144 per month<br>Three pets $199 per month |
| | | **Monthly Pet Rent (Colorado)** | $35 per pet |
| **NSF Fee** | $25.00 | **Trip Charge** | Trip Fee of $75 + Labor and Parts (Min $30) |
| **Security Deposit Amount** | **$3,135.00** | **Refundable Pet Deposit (Colorado)** | **$N/A** |
| **MONTHLY RENT AND FEES DUE** | | | |
| **Rent or Fee** | **Lease Section** | | **Subtotal:** |
| Monthly Base Rent | Section 4 | | **$2,090.00** |
| Monthly Pet Rent | Pet Addendum | | **$72.00** |
| Monthly Smart Home Fee | Smart Home System Service Agreement | | **$ 19.99** |
| Monthly Sec Dep Waiver Fee | Renter's Choice Amendment and Addendum | | **$N/A** |
| Monthly Pool Fee | Section 9.4 | | **$N/A** |
| Monthly Utility Service Fee | Utility and Services Addendum | | **$8.99** |
| Monthly Septic Fee | Section 7 | | **$N/A** |
| Monthly Landscaping Fee | Charges Lease Addendum | | **$N/A** |
| Monthly Pest Control Fee | Charges Lease Addendum | | **$N/A** |
| Monthly Amenity Fee | Charges Lease Addendum | | **$N/A** |
| Monthly Trash Service Fee | Charges Lease Addendum | | **$N/A** |
| Monthly Solar Fee | Solar Panel Service Agreement | | **$N/A** |
| Monthly Internet Service Fee | Internet and/or TV Service Agreement Addendum | | **$N/A** |
| | | | |

Resident's Initials: EC , SB ,    ,    ,    ,

**Progress Residential Borrower 17, LLC**

**By:** _Joseph S. Burst_

**Title:** Authorized Signatory



# Residential Lease

**1    PARTIES**

1.1  <u>Parties to Lease and Definition of Resident</u>.  **Progress Residential Borrower 17, LLC** ("Landlord") has entered into this Residential Lease ("Lease") with the individuals listed here:

Name: **Erica Crawford**                Email: **crawfordberica@gmail.com**        Phone:

Name:      **Skylar Bass**                                Name:
Name:                                                          Name:
Name:                                                          Name:

These listed persons are defined in this lease as "Resident," and will be referred to as "Resident," whether individually or collectively. "Resident" also includes any individual over the age of eighteen (18) at the time of signing this Lease for whom the Premises is the Primary residence.

1.2  <u>Occupants.</u> An "Occupant" is defined to include all minors and any individual, whether related or unrelated to any Resident or Occupant, who sleeps on the Premises for more than two (2) weeks in any calendar month at any point during the Lease Term. The following individuals will be Occupants in the Premises during the Lease Term:

Name:      **Carleigh Crawford**                        Name:
Name:      **Ethan Crawford**                            Name:
Name:      **Michael Crawford**                          Name:

1.3  <u>Occupancy</u>. Resident represents, warrants, and covenants that all persons who will reside at the Premises are listed above in Section 1.1 as a Resident or in Section 1.2 as an Occupant.  Resident must submit an application for any new or additional Resident who is not listed in Section 1.1. Resident must also notify Landlord in writing of any new or additional Occupants who are not listed in Section 1.2. All adult Occupants must meet application approval requirements. All Occupants must comply with the terms of this Lease and Resident will be held responsible for all actions or inactions of Occupants that violate the terms of this Lease. Only Resident shall be financially responsible for this Lease. Resident's execution of this Lease is intended to be Resident's signature on behalf of the Resident, individually, as well as on behalf of any minor Occupants.  By signing this Lease, the Resident affirms that the Resident has legal custody or control over any minor Occupants and has legal authority to execute this Lease on behalf of the minor Occupants. If Resident violates this provision, Landlord may declare Resident to be in default of this Lease and exercise Landlord's remedies. The Parties agree that the foregoing charge is a reasonable pre-estimate of the probable loss to Landlord in the event Resident fails to disclose the additional Occupant.

1.4  <u>Notification to Property Manager of Changes to Resident or Occupant Information</u>. **Resident agrees to notify Property Manager in writing within five (5) days of any changes to the information submitted in the original rental application, including changes to home or mobile phone numbers, email addresses, pets, and the addition or deletion of any Occupants**. **Resident must maintain a phone number local to the continental United States.**

1.5  <u>Consent for Phone and Text Message Communications.</u> Resident agrees Landlord and/or its agents may make phone calls and/or text messages, including via any automated means, to any phone number given for any purpose, including but not limited to information regarding the Premises, rent reminders and debt collection, maintenance request information, promotional or marketing messages, and similar purposes. Messaging and data rates may apply. For marketing messages, such consent is not a condition of any good or service and Resident may opt out at any time including by replying STOP to any text messages.  However, with respect to any messages to collect a debt, such consent is a condition of this bilateral Residential Lease Agreement and Resident cannot unilaterally revoke consent to receive such messages. Resident agrees to the collection and use of information in accordance with the privacy policy set forth at https://rentprogress.com/disclosures/privacy-terms-of-use/



1.6  <u>Consent for Email Communications.</u> Resident agrees Landlord and/or its agents may send emails to any email address given for any purpose, including but not limited to information regarding the Premises, rent reminders and debt collection, maintenance request information, promotional or marketing messages, and similar purposes. Resident may unsubscribe from any automated promotional or marketing email messages by clicking the unsubscribe link in any email from Progress Residential. Resident agrees to the collection and use of information in accordance with the privacy policy set forth at https://rentprogress.com/disclosures/privacy-terms-of-use/

1.7  <u>Renter's Agreement to One Rental Managed by Property Manager.</u> Resident agrees by executing this Lease that Renter will not rent or occupy any other home managed by Property Manager, or by any affiliate of Property Manager, during the Lease Term.

Initials: EC , SB , , , ,

1.8   <u>Addenda.</u> Any (i) Addenda and (ii) referenced rules, covenants, or regulations, including those of an applicable homeowner, neighborhood, or condominium association as provided in Section 9.4 of this Lease, are hereby incorporated into and made a part of this Lease, and any violation of any Addenda or referenced rules, covenants, or regulations shall be a default of this Lease.  In the event of a conflict of terms between any Addenda and the Lease, the terms of the addenda shall apply.

## 2   PREMISES

2.1  <u>Property.</u> Landlord rents to Resident and Resident rents from Landlord the residential property, personal property, and improvements located at the street address of: **1456 Arbor Pl Dr Morrow, GA 30260 (**defined in this Lease as the "Premises").

2.2  <u>Property Manager.</u> This Lease and the Premises will be managed by **Progress Residential Management Services, LLC, (404) 596-8381, 2658 Holcomb Bridge Rd Suite 118, Alpharetta, Ga 30022,** and CustomerCare@RentProgress.com (defined in this Lease, as updated from time to time by Landlord, as ''Property Manager''). Property Manager is authorized to act for and on of behalf of the owner for purposes of serving process and receiving and receipting demands and notice.  Landlord reserves the right to change the Property Manager in its sole and absolute discretion and shall provide notice of any change in Property Manager to the Resident.  Resident hereby acknowledges receipt of such Property Manager information.

2.3  <u>Landlord Reserved Improvements.</u> This Lease is subject to Landlord's express reservation of rights for Landlord and its contractors, representatives, agents, and other licensees, from time to time, to access, erect, construct, install, use, operate, maintain, repair, replace, and remove any improvements on, across, under, upon, in, over, and/or through the Premises and any improvements situated on the Premises, including, without limitation, the home situated on the Premises. These rights are defined in this Lease as "Reserved Rights," and these improvements are defined as "Landlord Reserved Improvements." Landlord Reserved Improvements may include, without limitation, wireless service improvements, solar panels, or any other improvement which Landlord or a licensee of Landlord desires to install at the Premises.  Without limitation, the foregoing reserved rights include the right to trim, cut, or remove any trees or other vegetation or any other debris from the Premises, which in any way impairs the operation or maintenance of the Landlord Reserved Improvements. The Landlord Reserved Improvements may be accessed, erected, constructed, installed, used, operated, maintained, repaired, replaced, and/or removed for Landlord's sole purposes and benefit and are not required to serve or otherwise benefit the subject Premises or Resident.

Resident agrees to reasonably cooperate with Landlord to facilitate access to the Premises and Landlord Reserved Improvements as needed for Landlord to be able to fully exercise Landlord's Reserved Rights. Resident acknowledges that activities in connection with the Reserved Rights may cause disruption or inconvenience to Resident, and any disruption or inconvenience shall not constitute a breach of the covenant of quiet enjoyment or a constructive eviction or otherwise



constitute a default by Landlord under this Lease or afford Resident any rights or remedies of any type or nature against Landlord; provided, however, Landlord shall use commercially reasonable, good-faith efforts to minimize any interference with Resident's quiet enjoyment of the Premises.  Unless otherwise elected by Landlord in writing, the Landlord Reserved Improvements are not a part of the Premises, and Resident shall not suffer or permit any lien or other claim to attach to the Landlord Reserved Improvements.  Resident shall not tamper with, modify, alter, or access the Landlord Reserved Improvements, and Resident shall not install or operate any improvements or equipment at the Premises that interferes with the operation and use of the Landlord Reserved Improvements.  Resident shall be responsible for any damage to the Landlord Reserved Improvements caused by Resident, Occupants, or Resident's agents, representatives, contractors, guests, or invitees.

**3    LEASE TERM, TERMINATION, and TRANSFER**

3.1    <u>Lease Term.</u> The Lease Term begins on 06/20/2025 ("Start Date") and ends on **06/21/2026** ("End Date"). This term is defined as the "Lease Term".

3.2    <u>Possession of Premises</u>.  Resident is deemed to have possession of the Premises when keys are provided by Landlord. Notwithstanding whether Resident has possession, Resident shall be responsible for Rent and any fees under this Lease as of the Start Date and through the End Date or transfer of possession of the Premises to Landlord, whichever is later. Landlord is deemed to have possession of the Premises when keys are received from Resident; however, Landlord's acceptance of possession during the Lease Term shall not constitute a waiver any of Landlord's rights and remedies under this Lease.

3.3    <u>Delay of Occupancy by Landlord.</u> **If Landlord is unable to deliver the Premises on the move-in date in a clean, safe and functional manner, Resident will be provided with a full refund of any holding fee or pre-lease fee.  Progress will be given three (3) days to cure the condition.  Rent will not be due for any days the Resident is unable to live in the Premises.  If the condition of the Premises cannot be cured within three (3) days, Resident may cancel the lease and be provided with a full refund of all monies expended, including the application fee and any Rent paid.**  Landlord shall not be liable for incidental or actual damages to Resident due to the delay.  Notwithstanding the foregoing, Resident shall not have the right to terminate this Lease because of delays caused by mere cleaning or make-ready work that does not affect habitability of the Premises.

3.4    <u>Resident's Refusal to Occupy.</u> If Resident refuses to take possession of the Premises after being made available by Landlord, the obligations of Landlord under this Residential Lease shall cease, and Landlord shall have the right to retain Resident's Security Deposit and all other amounts collected by Landlord as damages for Resident's breach. Landlord's acceptance of Resident's Security Deposit and such other collected amounts do not waive Landlord's right to exercise other available remedies.

3.5    <u>Lease Termination at the End of the Lease Term; Month-to-Month Extension</u>. **Resident may terminate this Lease at the end of the Lease Term only by giving Property Manager sixty (60) days' prior written notice of Resident's intent to vacate.  Landlord may terminate this Lease at the end of the Lease Term by giving Resident sixty (60) days' prior written notice or as otherwise permitted in this Lease. If neither party gives the requisite termination notice, then this Lease will continue on a month-to-month basis for successive one (1)- month terms until either party gives thirty (30) days' notice to terminate a month-to-month tenancy. This continuation of the Lease on a month-to-month basis shall not constitute a renewal of the Lease for any longer term.**  During any month-to-month tenancy, all other Lease terms will continue to apply, except that the monthly rent payments shall be increased to 120% of market Rent for the Premises, without notice. **If Resident provides notice of less than sixty (60) days of the intent to vacate, this will be considered late notice, and Resident will be charged Rent for the full sixty (60)-day notice period, beginning on the date of the late notice and prorated through the notice period.** Any offer of Landlord to enter into a new lease agreement or renewal term with Resident is specifically contingent upon Resident's account being in good standing.  In the event Resident is in default, monetary or otherwise, any renewal offers shall be deemed revoked, and Resident shall vacate the Premises at the end of the Lease Term without further notice or action of Landlord.



3.6 <u>Holdover</u>. If Resident fails to timely vacate the Premises after giving notice of termination to Property Manager or after receiving a Landlord notice of termination, Resident shall be considered a tenant at sufferance, and the holdover will not constitute a renewal or an extension for any further term. Rent during the holdover will be two times (2x) the Monthly Rent, calculated on a daily basis, and will be immediately due and payable without notice or demand. In addition, Resident will indemnify Landlord for any damages, including, without limitation, lost Rent, lodging expenses, moving fees, costs of eviction, and attorneys' fees, except that Resident will not indemnify Landlord for Landlord's sole negligence or for Landlord's failure to discharge a duty required under applicable law. Landlord does not consent to any holding over by Resident. This paragraph does not limit or waive any other rights or remedies of Landlord.

3.7 <u>Early Termination</u>. Resident agrees to pay an amount equal to two (2) months' Rent as liquidated damages if Resident elects to terminate the Lease for any reason (other than those identified in Section 19, below) prior to the End Date of the Lease. The Parties agree that two (2) months' Rent is a reasonable pre-estimate of the probable loss to Landlord in the event Resident terminates the Lease early. Upon receipt of payment, Landlord waives the right to seek additional Rent beyond the date that Landlord retakes possession, and such termination will not be considered an event of default. Failure to make timely payment may result in a default of the Lease, and Landlord shall have all rights and remedies available under this Lease.

Initials: _FC_ , _SB_ , ____ , ____ , ____ ,

3.8 <u>NO ORAL NOTICE; TIME IS OF THE ESSENCE</u>. Oral notification is not sufficient under any circumstances. Time is of the essence for providing notice of Lease termination, and strict compliance with the dates by which such notice must be provided is required.

4 **RENT.** "Rent" is defined under this Lease to include all Monthly Rent and all additional rental charges, fees, costs, and liquidated damages that Resident is obligated to pay Landlord under the terms of this Lease.

4.1 <u>Monthly Rent</u>. Resident will pay rent per month plus any applicable sales or rental tax ("Monthly Rent"), as follows:

06/20/2025 – 06/21/2026: <b>$2,090.00</b>.

Rent shall be due without notice, demand, or deduction.

4.2 <u>When Payable; Priority of Payments</u>. Monthly Rent is payable in advance on or before the first (1st) day of each calendar month and delinquent if not **<u>received</u>** by the third (3rd) day of each calendar month. All payments made by Resident to Landlord under this Lease will, without regard to their characterization or designation by Resident, be allocated by Landlord in the following order of priority: (i) to late charges, fees, liquidated damages, amounts owed from maintenance charge-backs, and HOA, city or municipal code, and other fines caused by Resident, and other Resident actions or inactions in violation of this Lease; (ii) to delinquent Rent; and (iii) to current Monthly Rent due and payable.

4.3 <u>Procedure for Making Payments</u>. Resident may not pay Rent in cash. Rent may be paid only through the following methods:

   (a) Electronic ACH payment, debit or credit card, or "Text to Pay," through Landlord's online payment portal available at www.rentprogress.com (additional fees for debit and credit card payments may apply); or

   (b) Money order or cashier's check payable to Landlord by mail to Landlord **at PO Box 4300, Scottsdale, AZ 85261.**

   (c) Walk-in cash payments will only be accepted at participating locations via the WIPS payment system.

4.4 <u>Acceptance of Partial Rent</u>. **Rent must be paid in full.** Any acceptance of partial Rent by Landlord is specifically accepted with full reservation of rights, and will not waive Resident's breach of this Lease or limit Landlord's rights to evict Resident through eviction proceedings, whether filed before or after Landlord's acceptance of



any such partial Rent payment.

4.5 <u>Additional Rent; No Waiver.</u> Any Late Charge, NSF Fee, HOA Fee, Administrative Fee, Pet Fee, Maintenance Fee or Trip Charge, Pool Fee, Utilities Fee or Charge, Utility Default Fee, Lien Removal Fee, Insurance Exemption Fee, Pest Control Charge, Septic Tank Fee, or Bed Bug Inspection Fee are deemed to be Rent under Section 5, and all such fees due must be paid with Resident's current installment of Rent. Landlord's acceptance of payment or partial payment of any of the fees will not constitute a waiver as to any Resident default, an extension of payment due dates, or a waiver of any other rights and remedies.

5 **LATE CHARGES; OTHER FEES.  Any payment due under this Lease that is not paid timely and in full shall be subject to fees and charges, which shall be deemed additional Rent. Potential fees and charges that may apply to this Lease can be found at the "Before You Apply" webpage at www.RentProgress.com.**

5.1 <u>Late Charges</u>. Any Rent payment or portion thereof <u>received by Landlord or its agents</u> after the third (3rd)day of the month will incur a late charge of one hundred fifty dollars $150.00 plus any applicable tax on the entire overdue amount ("Late Charge"), which will be charged on the fourth (4th) day of the month and each month thereafter in which any Rent payment, portion thereof, or Late Charge, remains outstanding. The Parties agree that the Late Charge is a liquidated damage and that the one hundred fifty dollars $150.00 charge is a reasonable pre-estimate of the probable loss to Landlord in the event Resident fails to make timely payment. If Resident pays Rent late on two (2) or more instances, then Landlord reserves the right to increase the Late Charge as permitted by applicable law and subject to the terms of any security deposit addendum attached to this Lease. In no event will any late charge payable under this Lease exceed the maximum late charge allowed under applicable law, and in the event Landlord collects any late charge in excess of the maximum amount allowed under applicable law, any such excess shall be credited to Resident's obligations under this Lease or, if this Lease has terminated or expired and Resident has no further obligations to Landlord at such time, any such excess shall be refunded to Resident.

5.2 <u>Insufficient Funds Fee.</u> If a check tendered in payment of any obligation under Resident's rental application or this Lease is dishonored or returned by the financial institution on which it is drawn for any reason, Landlord shall be entitled to charge an insufficient funds fee of twenty-five dollars ($25.00) plus any applicable tax ("NSF Fee") as liquidated damages in addition to all other late charges, fees, and expenses which Landlord may be entitled to recover either under this Lease or applicable law. If two (2) checks are returned at any time with respect to any payment made in connection with Resident's rental application or during the Lease Term, Resident shall make all subsequent payments in cashier's check or money order, as Landlord may elect; cash will not be accepted. The Parties agree that the $25 charge is a reasonable pre-estimate of the probable loss incurred by Landlord when Resident's payment is rejected by a financial institution.

5.3 <u>HOA or Municipality Non-Compliance Fee.</u> If Landlord receives notice of a CC&R, city code, or other municipal violation at the Premises, and the Landlord determines that the violation is attributable to action or inaction of Resident, a Non-Compliance Fee of forty-five $45.00 will be charged for notifying Resident of the violation, in addition to any fines assessed by the HOA, municipality, or other governing body. The Parties agree that the $45.00 charge is a reasonable pre-estimate of the probable loss to Landlord in having to investigate and administer the notice.

5.4 <u>Administrative Fees; Other Fees.</u> Administrative fees may apply from time to time, as follows:
　5.4.1　A nonrefundable Lease Administration Fee in the amount of **$125** will be due and owing prior to Resident taking possession of the Premises.
　5.4.2　Intentionally Deleted.
　5.4.3　When a Resident is added to the lease, each new Resident must pay the fifty dollar ($50.00) Lease Application Fee.

6 **SECURITY DEPOSIT. Resident must pay to Landlord an amount equal to $3,135.00 as a security deposit ("Security**



Deposit") on or before the date Resident enters into this Lease. The Security Deposit shall be paid by certified check, money order, or cashier's check separately from Rent and fees paid under the Lease. The Security Deposit shall stand as a continuing and unconditional guarantee for the terms of this Lease and Resident's obligations under applicable law, as well as security for the Rent; to indemnify Landlord against any damage to the Premises or furnishings, whether caused by Resident, Occupants, or members of their family or persons upon the Premises with their consent; and to indemnify Landlord for any breach of this Lease, except that Resident will not indemnify Landlord for Landlord's sole negligence or for Landlord's failure to discharge a duty required under applicable law.

6.1    <u>No use as Rent.</u> **THE SECURITY DEPOSIT MAY NOT BE USED BY RESIDENT IN LIEU OF PAYMENT OF ANY RENT DUE UNDER THIS LEASE UNLESS EXPRESSLY AGREED TO BY LANDLORD IN ITS SOLE DISCRETION.**

6.2    <u>Charges After Move-Out.</u> After Resident moves out, Property Manager will conduct a move-out inspection of the Premises. Resident will receive notice of the inspection and a reasonable opportunity to attend, if and when required by local law. During the inspection, the condition of the Premises will be reviewed in detail along with the move-in inspection report (if applicable) and any photographs of the Premises taken before or at the time of move-in, or during the mid-year inspection (if any). Any damage or defect of the Premises that was not present at move-in, and that exceeds "ordinary wear and tear", will be Resident's responsibility to repair or remediate, and Landlord will charge Resident's security deposit accordingly. See the attached Repair Services Cost Sheet Addendum for examples of charges that may be incurred. The Premises must be professionally cleaned. If the Premises are not left professionally clean, or if repairs that have been determined to be the Resident's responsibility are necessary, the actual costs of cleaning the Premises shall be deducted from the Security Deposit to cover the cost of cleaning the Premises.

6.3    <u>Ordinary Wear and Tear.</u> For the purposes of this Lease, "ordinary wear and tear" is defined as usual degradation which results from the day to day use of the Premises and from lapse of time, such as the normal aging of the Premises and its fixtures, flooring, appliances, hardware, and finishes, and shall not include any of the following: improper usage, neglect or abuse, failure to professionally clean the Premises, failure to return the Premises without defect or damage (including but not limited to damaged flooring, appliances, walls, or paint), pet odors and stains, and failure to comply with the maintenance obligations described in Section 11 below.

6.4    <u>Replenishment and Assignment.</u> If any part of the Security Deposit is deducted by Landlord in accordance with the terms of this Lease or applicable law, Resident shall, upon demand, immediately deposit with Landlord a sum equal to the amount deducted by Landlord, so that Landlord shall have the full Security Deposit on hand at all times during the Lease Term and any Renewal Terms or holdover period. In the event of the sale, transfer or assignment by Landlord of Landlord's interest in the Premises or this Lease, Landlord shall have the right to transfer the Security Deposit to the transferee, and after the transfer, Landlord is released from all liability for the Security Deposit, and Resident shall look solely to the new landlord for return of the Security Deposit.

6.5    <u>No Interest.</u> No interest will be paid on the Security Deposit unless required by applicable law.

7    **UTILITIES**. Resident agrees to pay for all charges and deposits for all utilities and services used and consumed at the Premises during the Lease Term and any Renewal Term or holdover hereof (all such charges being referred to as "Utility Charges"), including, but not limited to, water, sewer, trash, gas, electricity, telephone, internet, cable television or security ("Utilities") as available at the Premises and regardless of the accountholder of such Utilities. If the Premises utilizes a septic tank, the cost of maintenance and service in the amount of thirty-nine and 60/100 dollars (**$39.60)** per month will be charged monthly as additional Rent through Conservice.

Please refer to the "Utility and Services Addendum" for additional information.

8    **USE AND OCCUPANCY**



8.1 <u>Condition of Premises</u>. Resident will inspect the Premises and, subject to any duties imposed on Landlord under applicable law, agrees to accept the condition "AS IS" with no warranties or promises express or implied. Resident will personally examine the Premises prior to taking possession, and by taking possession of the Premises agrees that the Premises are suitable for Resident's occupancy. All visible damage or defect of the Premises must be noted in writing at move-in on a move-in inspection report or written communication to Property Manager. The absence of any such note will be conclusive evidence of Resident's responsibility for the damage or defect. Resident accepts the Premises and all furnishings, appliances, landscaping, and fixtures AS IS, WITH ALL FAULTS. Except as required by applicable law or provided in this Lease, Landlord has made no express or implied representations or warranties regarding the condition of the Premises. **The taking of possession of the Premises by Resident shall be conclusive evidence that the Premises were in satisfactory condition at the time such possession was taken.**

8.2 <u>Private Residential Use Only.</u> The Premises may be used as a private residence only. The Premises may not be used for operation of a business or commercial activity of any type, including, but not limited to, in-home child care.

8.3 <u>Assignment and Subletting.</u> Resident may not assign this Lease or sublet the Premises, including temporary or "micro" tenancies such as home-sharing or vacation rentals. Any such assignment or sublease of this Lease is immediately voidable by Landlord and shall be deemed a default under this Lease. Landlord's consent to any one assignment, transfer, or sublease will not be construed as consent to any subsequent assignment, transfer, or sublease and will not release Resident from Resident's obligations under this Lease.

8.4 <u>Homeowner Association Rules.</u> If the Premises are located within the boundaries of a homeowner, neighborhood, or condominium association ("HOA"), then Resident's rights under this Lease shall be subject to the covenants, restrictions, and requirements of the HOA.  The HOA's covenants, conditions, and restrictions ("CC&Rs") are hereby incorporated into this Lease. Resident acknowledges it has received a copy of any applicable CC&Rs.

    8.4.1   Compliance.  Resident must review and comply with all rules and requirements contained in CC&Rs affecting the Premises. If Landlord receives notice of a CC&R violation at the Premises, and Landlord determines that the CC&R violation is attributable to action or inaction of Resident, an HOA Non-Compliance Fee of forty-five ($45.00) will be charged as liquidated damages for notifying Resident of the violation. The Parties agree that the $45.00 charge is a reasonable pre-estimate of the probable loss to Landlord in having to investigate and administer the notice. In addition, Resident will be required to reimburse Landlord for any fines or other charges assessed against the Premises or Landlord for Resident's failure to comply with any such CC&Rs, whether or not Landlord has been notified of the violations or provided notice to Resident.  If Resident fails to remedy the violation within the appropriate time period, Landlord or Property Manager is authorized to cure the violation on Resident's behalf, and Resident shall be required to pay the cost to cure.

    8.4.2   Approval.  If an HOA requires approval of this Lease and this Lease is not approved by the HOA for any reason, Resident agrees to comply with the demand of the HOA including but not limited to immediately and peacefully vacating the Premises (if possession has already been given), and curing violations and/or paying fines, and in all cases holding Landlord and Property Manager harmless for such non-approval.  Any grievances or claims by Resident related to the Lease denial must be directed at the HOA, not Landlord or Property Manager.

    8.4.3   Fees.  Resident will be responsible for any fees or charges required to be paid to the HOA for amenities, utilities, or other mandatory services that benefit Resident, such as cable/satellite service, trash services, and required landscaping services.  These charges may change from time to time as determined by the HOA, and when Landlord is notified, these charges will be added to Resident's ledger to be paid as additional Rent.  Charges that are known to Landlord as of the date of this Lease will be identified in an addendum to this Lease.

8.5 <u>Neighborhood Conditions</u>. Resident is advised to satisfy itself as to neighborhood or area conditions, including but

© 2025 Progress Residential                      Residential Lease (2025.v1)                  9



not limited to: schools; proximity and adequacy of law enforcement; crime statistics; proximity of registered felons or offenders; fire protection or other governmental services; availability, adequacy, and cost of any wired or wireless internet connections or other telecommunications or other technology services and installations; proximity to commercial, industrial, or agricultural activities; existing and proposed transportation, construction, and development that may cause or affect noise, view, or traffic; airport noise; noise or odor from any source; wild and domestic animals; other nuisances, hazards, or circumstances; cemeteries; facilities and condition of common areas; conditions and influences of significance to certain cultures and/or religions; and personal needs, requirements, and preferences of Resident.

8.6 <u>Pets.</u> Resident may not harbor any pet on the Premises that is not identified in or otherwise permitted by the Pet Addendum, even if only temporarily. If Resident violates this provision, Landlord may take all or any of the following actions: (i) declare Resident to be in default of this Lease and exercise Landlord's remedies; (ii) charge to Resident Landlord's cost to exterminate the Premises for fleas and other insects, clean and deodorize Premises, and repair any damage caused by the unauthorized pet(s).

8.7 <u>Prohibited Activities.</u> **Smoking is not allowed on the Premises**. Moreover, Resident shall not:
   (a) install or permit any of the following on the Premises, even if only temporarily: spa, hot tub, above-ground pool, trampoline, or any item which may cause or causes a suspension or cancellation of property insurance coverage or increases property insurance premiums; or
   (b) cause, or permit the Premises to be used in connection with, any activity that is a nuisance, offensive, noisy, or dangerous or that involves (i) repairing a vehicle; (ii) violation of any zoning ordinance, CC&R, or other local rule or regulation; (iii) illegal or unlawful activity; or (iv) obstruction, interference with, or infringement on the rights of other persons near or about the Premises.
   (c) disrupt or interfere with Landlord's business operations, or communicate with Landlord, Landlord's agent, or their employees in an unreasonable, discourteous, rude or hostile manner
   Resident agrees and authorizes Landlord to use any arrest record or police-generated reports referring to Resident as reliable direct evidence of Resident's conduct or violation of this section.

8.8 <u>Parking</u>. Resident shall only allow parking of Resident's and Occupants' personal vehicles at the Premises, subject to local rules and regulations and applicable CC&Rs. Resident may not park or permit any person to park any vehicles on the grass or on the front or back yard. The driveway, garage, and/or parking space(s) are to be used for properly licensed and operable motor vehicles only and, unless approved in writing by the Property Manager, may not be used for trailers, boats, campers, RVs, buses, or trucks (other than pick-up trucks).  Parking areas must be kept clean. Vehicles leaking oil, gas, or other fluids must not be parked on the Premises, and Resident will be charged for power washing any stains left by vehicle leaks. Mechanical work or storage of inoperable vehicles is not permitted.

8.9 <u>Storage.</u> Resident may store only personal property owned by Resident and Occupant(s) and may not store property of others.

## 9    LANDLORD'S MAINTENANCE OBLIGATIONS

9.1 <u>Maintenance.</u> Landlord will maintain, replace. or repair any items on the Premises for which applicable law dictates Landlord is responsible. Financial responsibility for such maintenance will be subject to applicable law and the terms of this Lease:

   9.1.1    To the extent provided or owned by the Landlord, Landlord shall maintain, repair, or replace (as applicable), at Landlord's expense: the roof, front and back doors, foundation, HVAC, electrical system, plumbing, hot water tank, refrigerator, stove, microwave, dishwasher, structural components, exterior paint and siding (except for power washing), locks, ceilings, exterior fencing, and Pool. Resident is responsible for notifying Landlord of any such maintenance needs**. Notwithstanding the foregoing, Resident shall be liable for any damage or loss caused or permitted to be caused by misuse, negligence,**





Document digitally signed using RentCafe eSignature services. Document ID: 11237506

**or action/inaction of Resident, Occupants or their guests or invitees.** The attached Repair Services Cost Sheet Addendum sets forth typical repair costs and fees that will be charged to Resident for any such damage.

9.1.2     Landlord WILL NOT pay for costs incurred to repair the following items unless caused by Landlord or Property Manager or by their negligence or misconduct or Act of God: (i) damage caused by Resident to windows, screens, or interior doors; (ii) damage from wastewater stoppages caused by Resident, including foreign or improper objects in lines that exclusively serve Premises; (iii) items that are the responsibility of Resident; and (iv) items that are cosmetic in nature with no impact on the functionality or use of the item.

9.1.3      To the extent found on the Premises, Landlord is not responsible for repairing or replacing the following features: built-in shelving or cabinetry in closets and garages, washer and dryer, outdoor grills/fireplaces and any gas or electrical lines thereto, sheds, water softeners, alarm systems, intercom systems, cable/satellite wiring and equipment, built-in audio systems, and central vacuum systems.

9.2  <u>Maintenance Requests.</u> Resident shall make all requests for repairs by phone at **(404) 596-8381,** by email to customercare@rentprogress.com, or through the resident portal at www.rentprogress.com. If Resident is delinquent in Rent at the time a repair request is made, Landlord is not obligated to make such repair until the delinquency is cured, with the exception of repairs defined as Emergencies in Section 11.1 or repairs that affect the habitability of the Premises.

9.2.1     Response Time. Property Manager will make reasonable efforts to commence non-emergency repairs within a reasonable time after receiving repair request from Resident unless otherwise required under the law. Property Manager is not obligated to make repairs on weekends or holidays unless required to do so under applicable law.

9.2.2     Trip Charges. Trip Charges include i) cost of labor and replacement parts (which shall be a minimum of thirty dollars ($30.00); and ii) a trip fee in the amount of seventy-five ($75.00) ("Trip Charge"), which shall be charged to Resident as Additional Rent for the service of providing a maintenance technician to make a trip to the Premises to provide service repairs at the Resident's request. The Trip Charge is subject to change should Property Manager's costs increase. However, if Property Manager determines that the repair falls under Landlord's maintenance obligations under this Lease, the Trip Charge will be waived. If a maintenance technician makes arrangements with Resident to complete a repair but is unable to safely access the Premises upon arrival, Resident will be charged the Trip Charge, whether or not Resident made the initial request for the repair. Trip Charges will be charged to Resident as additional Rent.

9.2.3     Repair Costs. Refer to the attached Repair Services Cost Sheet Addendum for examples of charges to Resident for repairs and services for items undertaken by Landlord, Property Manager, or agent that are Resident's responsibility.

9.2.4     Resident shall notify Property Manager at the time of requesting a repair or other service if any Resident or Occupant of the Premises is ill or showing signs of infectious disease, and will comply with Property Manager's reasonable requests to temporarily relocate from the Premises, self-quarantine within the Premises away from the area needing service, and other safety precautions.  Resident acknowledges and agrees that such an illness may limit the ability of Landlord or Property Manager to perform services on the Premises in a timely manner, and is responsible for and releases Landlord and Property Manager from any claim or damages that may be incurred as a result of such delay.

9.3  <u>Advance Payments and Reimbursements for Repairs.</u> Landlord may require advance payment for repairs or other payments by Resident. If advance payment is not required, Resident must promptly reimburse Landlord for all



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

…

amounts due by Resident under this Lease. Landlord reserves the right to perform a repair or service to a condition on the Premises that Landlord believes could impact health or safety, whether or not the condition is Landlord's responsibility to remediate. If this repair or service is not Landlord's responsibility to remediate under this Lease or applicable law, Landlord reserves the right to charge Resident the cost of the repair or service to be paid as additional Rent.

9.4 <u>In-Ground Pool.</u> Any pool, spa, or other water feature (defined under this Lease as the "Pool") located on the Premises will be maintained by a service provider retained by Landlord or Property Manager This maintenance cost in the amount of **$N/A** per month will be charged monthly as additional Rent. Pool maintenance is limited to a once per week service to ensure the filtration system and chemical balance is at proper levels. The service provider will also provide a general cleaning service of the Pool on their visit. Resident should maintain the Pool in between service dates only by skimming the surface and Pool floor as well as regularly emptying skimmer baskets and removing any flotation devices or Pool toys after utilizing the Pool. Resident should not add any chemicals to the Pool nor adjust any settings on the filtration system, including, but not limited to, valve adjustment, timer adjustment, opening pump covers, and opening filters Please contact Property Manager with all Pool maintenance or service needs. Resident agrees to cooperate with such maintenance by Property Manager and immediately notify Property Manager of any conditions affecting Pool safety, including, but not limited to, Pool safety fencing or any enclosure screens, gates, or barriers relating to the Pool. Resident shall not remove, alter, destroy, damage, or otherwise modify any Pool safety fencing, enclosure screens, gates, or barriers relating to the Pool. The following acts shall be deemed a default under the Lease: i) Resident's failure to maintain the Pool as described in this Section; ii) the addition of chemicals to the Pool by Resident; iii) adjustment of settings on the filtration system by Resident; or iv) any removal, alteration, destruction, damage, or other modification by Resident of Pool safety fencing, enclosure screens, gates, or barriers relating to the Pool.

9.5 <u>Interior Pest Control.</u> With the exceptions listed below, Resident is responsible during the Lease Term for controlling pests inside the Premises or on the residence itself. Landlord is responsible for pest infestations that compromise the structural integrity or habitability of the Premises (e.g., termites, carpenter ants, wood bees, beehives, wasp/hornet nests, rodents, bats, birds nesting inside building). Resident will immediately notify Property Manager if Resident suspects these types of infestations or if Resident identifies any pests present at the Premises within the first thirty (30) days of the Lease Term. Landlord reserves the right to remediate any pest control issues that compromise the structural integrity or habitability of the Premises or that occur more than thirty (30) days following the commencement of the Lease Term and may charge Resident for the cost of any treatments that are determined to be caused by Resident or Resident's negligence. Pest control for the exterior of the Premises is addressed in Section 11.2 of this Lease.

9.6 <u>Replacement of Fixtures.</u> Landlord reserves the right to replace any furnishings, appliances, or fixtures with similar items. Landlord is not required to replace any furnishings, appliances, or fixtures with the exact brand, style, grade, color, or accessories, so long as the replacement is fit for its use.

9.7 <u>No Landlord Duty to Maintain Personal Property.</u> Landlord has no duty to maintain, repair, or replace any appliances owned or placed on the Premises by Resident, or any other personal property owned or placed on the Premises by Resident.

9.8 <u>Limitation of Liability.</u> **Landlord will not be liable to Resident for any inconvenience or annoyance caused by the making of any repairs, alterations, additions, or improvements to the Premises.**

10 **RESIDENT'S MAINTENANCE OBLIGATIONS. Resident shall maintain the Premises in good, clean and tenable condition throughout the Lease Term.** Resident is financially responsible for the minor repairs and ordinary maintenance of the Premises unless expressly stated otherwise in this Lease. By way of example, Resident shall:

© 2025 Progress Residential        Residential Lease (2025.v1)        12



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

10.1.1  Notify in writing Property Manager of any material issues with the Premises;

10.1.2  promptly dispose of all garbage in appropriate receptacles;

10.1.3  supply and change heating and air conditioning filters at least once a month;

10.1.4  supply and replace all light bulbs, fluorescent tubes, batteries for smoke alarms, carbon monoxide detectors, garage-door openers, ceiling fan remotes, and other devices (of the same type and quality on the Premises on the Start Date);

10.1.5  promptly remove or eliminate any dangerous condition on the Premises that is caused during Lease Term where the removal does not create a risk of harm and promptly notify Landlord of any dangerous condition that cannot be removed by Resident;

10.1.6  repair all clogged drains and toilets caused during Lease Term from placing foreign or improper objects in plumbing lines;

10.1.7  repair damage to the Premises caused by Resident or Occupants or their guests or invitees, or caused by break-in or vandalism not arising from defective construction or Landlord's failure to keep the Premises in repair;

10.1.8  winterize the Premises—e.g., maintain minimum levels of heat to prevent freezing of water pipes and outdoor spigots, wrap outside water main during winter, remove snow accumulations, remove ice from front of Premises, blow out sprinkler system, etc.;

10.1.9  maintain and repair minor above-ground irrigation problems, such as broken drip lines and sprinkler heads;

10.1.10  maintain a clean and functioning mailbox and pay for the community or group mailbox key(s);

10.1.11

10.1.12  consistent with Sections 10.5 and 11.2 of this Lease, pay for any periodic, preventative, or additional pest control or extermination services desired by Resident, including fleas, ticks, scorpions, ants, etc.; and

10.1.13  comply with the Mold Addendum attached to this Lease.


## 11  EMERGENCIES; EXTERIOR MAINTENANCE AND EXTERIOR PEST CONTROL; UNPERMITTED ACTIONS; FAILURE TO MAINTAIN; VACATING PREMISES; SMOKE/FIRE ALARMS AND CARBON MONOXIDE DETECTORS

11.1.  **Emergencies. Emergencies must be reported <u>immediately</u> to Property Manager at (404) 596-8381. "Emergencies" are defined to include, but are not limited to:**

(a)  Electrical: sparking, fire, smoke, or overheated fixtures.

(b)  Fire: Resident must first notify the fire department immediately, followed by an emergency call to Property Manager.

(c)  Lack of Heat: ONLY if it poses a health risk to Residents or Occupants.

(d)  Lack of Air Conditioning: ONLY if it poses a health risk to Residents or Occupants.

(e)  Heavy Structural Damage: roof, foundation, or walls.

(f)  Plumbing: Flooring or stoppage of drains due to roots or breakdown of fixture not caused by Resident.

(g)  Theft: Resident must first notify police immediately.

11.2.  <u>Exterior Maintenance and Exterior Pest Control</u>.

(a)  <u>Exterior Maintenance.</u> Resident is responsible for Exterior Maintenance at Resident's own expense. "Exterior Maintenance" is defined to include incidental, ordinary maintenance of the exterior of the Premises and Yard, (defined below) including, but not limited to, mowing and fertilizing the grass, trimming bushes, tree trimming up to eight feet (8') in height, and removing debris from the Yard. "Yard" is defined to include all lawn, shrubbery, bushes, flowers, gardens, trees, rocks, or other landscaping features and foliage on or encroaching on the Premises, but does not include common areas maintained by an HOA. Unless prohibited by ordinance, applicable law, or HOA rules, Resident will water the Yard at reasonable and appropriate times.

(b)  <u>Exterior Pest Control.</u> "Exterior Pest Control" is defined to include controlling pests located outside of the residence, including in the Yard. With the exceptions below, Resident is responsible for the cost of Exterior Pest Control, including any periodic or preventative pest control services as desired by Resident. Landlord is



responsible for any Exterior Pest Control issues that may affect the structural integrity or habitability of the Premises.

11.3.  <u>Unpermitted Actions</u>. If Resident or an Occupant installs any fixtures on the Premises, authorized or unauthorized, such as light fixtures or other items mounted on the walls or ceiling; curtains or window treatments; additional smoke alarms; locks; alarm systems; cables; satellite dishes; or other fixtures, such fixtures will become the property of Landlord and may be removed by Landlord at Resident's expense, unless Resident removes the fixture prior to Move-out and restores the Premises to its original condition. Except as expressly permitted under this Lease or in writing by Landlord, Resident or an Occupant may not:

(a)  Remodel, paint, alter, or structurally change the Premises or remove or add any fixtures;
(b)  remove, change, add, or re-key any lock;
(c)  make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock;
(d)  permit water beds or other water furniture on the Premises;
(e)  install phone or video cables, outlets, antennas, satellite receivers, or alarm systems;
(f)  alter, replace, or remove flooring material or wallpaper;
(g)  keep or permit any hazardous material on the Premises;
(h)  keep or permit any material or item which could cause any liability or fire or extended insurance coverage to be suspended or canceled or any premiums to be increased; or
(i)  dispose of any environmentally detrimental substance (e.g., motor oil or radiator fluid) on the Premises.

11.4.  <u>Failure to Maintain</u>. If any damage, beyond ordinary wear and tear, including the yard (as defined above), is caused by Resident, Occupants, or their guests or invitees, Resident shall be responsible for such repairs. Resident shall either (1) pay a vendor hired by Resident to perform the repair; or (2) the repair cost will be included for payment as additional Rent on the next rental statement from Landlord. If Resident hires a vendor to make the repair, the vendor must be approved in advance by Landlord.  Notwithstanding any provision of this Lease to the contrary, any damage or injury to the Premises or any part thereof resulting from the misuse or negligence of Resident, Occupants, or their guests or invitees shall be repaired by Resident immediately.  If Resident fails or refuses to comply with Resident's obligations under this Lease, Landlord may perform the repairs or maintenance work, and the cost of such work shall be paid by Resident to Landlord as additional Rent on the next rental statement.

11.5.  <u>Obligations Upon Vacating Premises</u>.  Upon termination of this Lease, Resident must (i) vacate and surrender the Premises (including any parking or storage space) to Property Manager, professionally clean, and in as good condition as the Premises were at the beginning of the Lease Term, ordinary wear and tear (as defined above) only excepted; (ii) give Property Manager all copies of all keys or opening devices to the Premises, including any common areas; (iii) remove all trash and personal belongings from the Premises, including any garage or storage locations; this obligation shall include ensuring that any items left for trash collection are accepted by the applicable trash provider and (iv) give written notice to Property Manager of Resident's forwarding address.

(a)  Alterations and Improvements. All alterations/improvements made to the Premises, including any window treatments, light fixtures, and other items mounted on the wall or ceiling, become Landlord's property upon termination of this Lease. Landlord may charge Resident for restoration of the Premises to the condition it was in prior to any alterations/improvements.
(b)  Personal Property. All personal property required to be removed by Resident at the expiration or termination of this Lease which remains on the Premises after Resident has vacated shall be considered abandoned by Resident and, at the option of Property Manager, may either be retained as Landlord's property or may be removed and disposed of by Property Manager at Resident's expense.
(c)  Charges Against Security Deposits. Property Manager will conduct an inspection of the Premises after Resident has vacated and apply charges against the Security Deposit as provided in Section 7, above.

11.6.  <u>Smoke/Fire Alarms, Carbon Monoxide Detectors.</u> The Premises are equipped with smoke/fire alarms and carbon



monoxide detectors in accordance with applicable laws.  Disconnecting or intentionally damaging a smoke/fire alarm or carbon monoxide detector, failing to regularly replace batteries, or removing a battery without immediately replacing it with a working battery may subject Resident to civil penalties and liability for damages.

12   **DAMAGE TO PREMISES ARISING FROM FIRE, FLOOD, OR OTHER CASUALTY.**  Resident shall be liable for any damage to the Premises because of the occurrence of fire, flooding, or other casualty, unless sufficient evidence, as determined by a fire marshal, Landlord's insurance adjuster, or a professional of similar expertise, determines that Resident is not liable for the damages, including damages caused by Landlord's own negligence.  If the Premises (a) are destroyed or damaged to the extent that they become untenable because of the occurrence of fire, sinkhole, catastrophic ground cover collapse, flooding, or other casualty, or (b) is otherwise determined by Landlord to contain a health and safety risk, this Lease shall terminate, Resident shall vacate the property immediately, and all Rent shall be prorated between Landlord and Resident as of the date Resident vacates the property. If the Premises remain tenable after the occurrence of any casualty damage, Landlord either may within a reasonable time make, or require Resident or its insurer to make, all repairs required to restore the Premises to as good a condition as existed prior to the occurrence of such casualty, or Landlord may elect to cancel this Lease, and all Rent shall be prorated as of the date of such cancellation. Property Manager shall make all determinations regarding whether the Premises are untenable, and Resident hereby releases, indemnifies and holds Landlord and Property Manager harmless from all claims, liability, and damages related to such determinations or casualty, except that Resident does not indemnify Landlord for Landlord's sole negligence or for Landlord's failure to discharge a duty required under applicable law.

13.   **INSURANCE**. At Resident's sole expense, Resident shall maintain a renter's insurance policy or the equivalent issued by a licensed insurance company of Resident's selection that provides at least one hundred thousand dollars ($100,000.00) for liability coverage. Resident must provide Landlord with a copy of Resident's renter's insurance policy prior to move-in. The policy must name Landlord, Property Manager, and their successors and assigns as additional insureds and/or additional interested parties and must remain in place through the Lease Term and any Renewal Term or holdover thereof. If Resident fails to acquire or maintain the renter's policy, Landlord reserves the right to take action as set forth under the Renters Insurance Program Addendum, attached, including charging an Insurance Exemption Fee as liquidated damages that represent a reasonable estimate of the losses incurred by Landlord for Resident's failure to maintain renter's insurance, or purchasing renter's insurance on behalf of Resident and charging the cost of the policy to Resident as Rent.  Landlord shall have the right to submit a claim against the renter's policy without Resident's approval or consent. Landlord or Landlord's insurance shall not be liable to Resident for loss of Resident's personal property, furnishings, or belongings  Any and all insurance policies purchased by Landlord, including those for casualty and fire loss, are for the sole benefit of Landlord and its assigns. Under no circumstances will Resident  be considered a co-insured party under ANY of Landlord's insurance policies.

14.   **RESIDENT DEFAULT**. If Resident fails to timely pay any amounts due under this Lease or otherwise fails to comply with the terms of this Lease, Resident will be deemed in immediate default.

14.1.   <u>Remedies.</u> Landlord will be entitled to exercise any and all available legal remedies, including any one or more of the following in accordance with applicable law: (i) terminate Resident's right to occupy the Premises; (ii) re-enter upon and take possession of the Premises; and/or (iii) declare the entire remaining unpaid Rent for the Lease Term to be immediately due and payable even if Resident is evicted and take immediate action to recover and collect the same by any available procedure.  In addition, in an event of monetary default, Landlord in its sole discretion may apply some or all of the Security Deposit to outstanding balances and demand replenishment of the Security Deposit, which Resident shall provide within thirty (30) days of written demand.   After giving notice to vacate or filing an eviction suit, Landlord may still accept Rent or other sums due; the filing of an eviction or acceptance of funds does not waive or diminish Landlord's right of eviction or any other contractual or statutory right.

14.2.   <u>Resident Liability.</u> Subject to applicable law, in the event of a default, Resident will be liable for (i) any lost Rent; (ii) all costs incurred in connection with re-letting the Premises, including, but not limited to, leasing



fees/commissions, advertising fees, utility charges, and any other expense reasonably incurred to re-let the Premises, including marketing fees in an amount approximately equal to one (1) month's Rent; (iii) repairs to the Premises for which Resident is financially responsible under this Lease; (iv) all costs associated with eviction of Resident, including, but not limited to, attorneys' fees, court costs, costs of service, witness fees, and prejudgment interest; (v) all costs incurred in connection with collection of amounts due under this Lease, including, but not limited to, administrative fees for lease enforcement, collection fees, late charges, and returned check charges; and (vi) any other recovery to which Landlord may be entitled.

14.3.   <u>Waiver</u>. In the event of a current or future default by Resident, any failure of Landlord or Property Manager to enforce any provision of this Lease, or to demand strict compliance to the terms of the Lease, shall not be construed as modifying the terms of this Lease or as a waiver of Landlord's right to terminate or otherwise enforce the provisions of this Lease.  No provision of this Lease shall be deemed waived by any Party unless the provision is expressly waived in writing signed by the waiving Party. No waiver shall be implied by delay or any other act or omission of any Party. No waiver by any Party of any provision of this Lease shall be deemed a waiver of such provision with respect to any subsequent matter relating to such provision.

15.   **INDEMNIFICATION. TO THE EXTENT PERMITTED BY APPLICABLE LAW, RESIDENT AGREES TO INDEMNIFY, DEFEND (WITH COUNSEL REASONABLY ACCEPTABLE TO  LANDLORD), AND HOLD HARMLESS LANDLORD, PROPERTY MANAGER, AND THEIR AGENTS, AFFILIATES, EMPLOYEES, AND VENDORS, FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, LIABILITIES, CAUSES OF ACTION, SUITS, JUDGMENTS, DAMAGES, AND COSTS AND EXPENSES INCLUDING ATTORNEYS' FEES (COLLECTIVELY DEFINED UNDER THIS LEASE AS "CLAIMS"), ARISING FROM ANY OCCURRENCE IN OR ON THE PREMISES, THE USE AND OCCUPANCY OF THE PREMISES, OR FROM ANY ACTIVITY, WORK, OR THING DONE, PERMITTED, OR SUFFERED BY RESIDENT OR OCCUPANTS OR THEIR AGENTS, INVITEES, GUESTS, SUB-RESIDENTS, OR ASSIGNEES IN OR ON THE PREMISES. THE INDEMNIFICATION ESTABLISHED BY THIS SECTION INCLUDES CLAIMS ARISING FROM ANY ACT OR OMISSION OF RESIDENT OR OCCUPANTS OR THEIR AGENTS, INVITEES, GUESTS, SUB-RESIDENTS, OR ASSIGNEES AND FROM RESIDENT'S FAILURE TO PERFORM ITS OBLIGATIONS UNDER THIS LEASE. WITHOUT LIMITATION, THE INDEMNIFICATION ESTABLISHED BY THIS SECTION INCLUDES ANY CLAIM WHEN SUCH LOSS IS CAUSED OR ALLEGED TO BE CAUSED BY THE JOINT, COMPARATIVE, OR CONCURRENT NEGLIGENCE OR FAULT OF LANDLORD, PROPERTY MANAGER, OR THEIR AGENTS, INCLUDING ANY CLAIM BASED UPON OR ALLEGED TO BE BASED UPON THE STRICT LIABILITY OF LANDLORD, PROPERTY MANAGER, OR THEIR AGENTS. THIS INDEMNITY PROVISION SHALL SURVIVE TERMINATION OR EXPIRATION OF THIS LEASE. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS SECTION, INDEMNIFICATION ESTABLISHED BY THIS SECTION EXPRESSLY EXCLUDES LIABILITY OR ASSOCIATED COSTS BASED UPON THE SOLE NEGLIGENCE OF LANDLORD, PROPERTY MANAGER, OR THEIR AGENTS, OR UPON THE FAILURE TO DISCHARGE A DUTY REQUIRED UNDER APPLICABLE LAW BY LANDLORD, PROPERTY MANAGER, OR THEIR AGENTS.**

16.   **POOL INDEMNIFICATION AND WAIVER.**  If the Premises includes or has access to a Pool, which for the purposes of this Section includes any lake, pond, or other water feature, Resident further acknowledges that there may be no wall, fence, or other barrier between the Pool and the residence on the Premises, and there may be  no motorized safety cover on the Pool which requires the operation of a key switch. Resident assumes all risk and liability relating to the Pool and access to the Pool, and hereby waives any and all claims arising from or relating to the Pool and access to the Pool, existing now or arising in the future, against Landlord, Property Manager, or their agents.  Resident agrees to indemnify Landlord against any and all such claims.   This indemnification and release of liability does not include damages from Landlord's sole negligence or from Landlord's failure to discharge a duty required under applicable law.  Resident acknowledges that the Pool is strictly an amenity and that the use of this amenity is not guaranteed under the terms of this Lease.  Any interruption or non-availability of the use of the Pool will not violate any terms of this Lease.

17.   **LANDLORD'S LIMITATION OF LIABILITY**. **Landlord's liability under this Lease will be limited to Landlord's unencumbered interest in the Premises, with the exception of liability arising from Landlord's gross negligence, willful conduct, or breach of duties imposed by applicable law.** Neither Landlord nor any of its partners, members, officers, directors, agents, affiliates, employees, shareholders, successors, assigns, or pledges, including without



limitation, the person signing this Lease on Landlord's behalf, will in any way be personally liable under this Lease.

18. **ACCESS TO PREMISES; COOPERATION**

Inspections.  Property Manager has the right to enter the Premises at any time during the Lease Term or during any renewal or holdover term with Resident's consent or after twenty four (24) hours' notice (verbal or written) to Resident for the purpose of inspecting and documenting the condition of the Premises; preventing waste or damage; performing scheduled services, preventative maintenance, or work related to improving energy efficiency or environmental sustainability at the Premises, **including the installation of an energy monitoring device or system;** discharging any duty imposed upon Landlord by this Lease or by law; showing the Premises to prospective purchasers, tenants, or lenders; or for other reasonable business purposes. Landlord may partner with a vendor to perform these property inspections or request Resident's assistance in completing certain tasks which may include, but are not limited to, move ins, move out, annual, periodic, exterior, and maintenance.

18.1.   Resident agrees to cooperate with Landlord and any vendor engaged by Landlord to complete the requested inspections within the designated time frame.  Unless express written permission from the Landlord is given prior to the deadline, Resident(s) are responsible for the completion of these inspections within the required time frame. Resident agrees that 24 hours' notice before entry is not required in cases of emergency, including the preservation of the Premises or human life.

18.2.   Signs; Cooperation. Resident authorizes Landlord and Property Manager to prominently display a "For Sale", "For Lease", "For Rent" or similarly worded sign on the Premises at any time during the Lease Term or any renewal or holdover term. In addition, Landlord, Property Manager, or their agents may take interior or exterior photographs or images of the Premises and use the photographs or images in advertisements to lease or sell the Premises. Resident further agrees to cooperate with any financing, sale, or other transfer or disposition relating to the Premises and agrees to take such actions and execute such documents as reasonably requested by Landlord, Property Manager, a lender, a holder or beneficiary of any direct or indirect interest in the Premises, or any other party in connection with the business purposes of Landlord or its affiliates.

19. **SPECIAL STATUTORY RIGHTS.** Depending on the location of the Premises, Resident may have special statutory rights to terminate this Lease early in certain situations such as military service and domestic violence.

19.1.   Military Service. As provided by the Servicemembers Civil Relief Act (50 USC Appx. §§501 et seq. as amended) and similar local laws, if Resident is or becomes a service member or dependent of a service member, Resident may terminate this Lease by delivering to Property Manager a written notice of termination and a copy of an appropriate government document providing evidence of (i) entrance into military service, (ii) military order for permanent change of station, (iii) military orders to deploy with a military unit for not less than sixty 60 days; or (iv) a release from active duty after having leased the Premises while on active duty status and the Premises are thirty-five (35) miles or more from Resident's home of record. If any of these criteria are met, Resident must provide Property Manager with a written notice of termination. Termination of this Lease will be effective on the date stated on the notice or thirty (30) days after Property Manager's receipt of the notice, whichever is later.

19.2.   Domestic Violence. Landlord, Property Manager, and Resident shall strictly follow all applicable law regarding their responsibilities and obligations under this Lease in circumstances of documented domestic violence.



19.3.   <u>Sexual Offenses or Stalking.</u> Landlord, Property Manager, and Resident shall strictly follow all applicable law regarding their responsibilities and obligations under this Lease in situations involving certain sexual offenses or stalking.

20.   **CONDEMNATION**. If the Premises, or any part of the Premises, are condemned for any public use or purpose by any legally constituted authority, with the result that the Premises are not reasonably suitable for Resident's continued use and occupancy, Resident may cancel this Lease, and Landlord Progress will not charge any Monthly Rent after the date of cancellation. Resident will remain liable for all Rent owed up to the date of cancellation. Landlord shall be entitled to any and all compensation paid by the condemning authority.

21.   **RESIDENT ESTOPPEL CERTIFICATE**. Within five (5) days after requested by Landlord, Resident shall deliver an estoppel certificate in such form and to such address as Landlord may require, certifying such matters regarding this Lease as Landlord may reasonably request.

22.   **RESIDENT REPRESENTATIONS**. Resident warrants that all statements in Resident's rental application are true and correct. Landlord and its agents have relied upon Resident's rental application as an inducement for entering into this Lease, and Resident warrants to Landlord that the facts stated in such application are true and correct. If any facts stated in the application prove to be untrue, Landlord will have the right to terminate this Lease and collect from Resident any damages resulting from the cancellation.

23.   **MEDIATION/WAIVER OF JURY TRIAL. Where permitted by applicable law, Resident agrees to mediate with Landlord any dispute or claim arising from this Lease, or any resulting transaction, before resorting to court action. LANDLORD, RESIDENT, AND OCCUPANTS EACH KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY AND WAIVE THE RIGHT TO CLAIM OR RECEIVE CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS, CROSS-CLAIMS, AND THIRD-PARTY CLAIMS) BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE LEASE, THE PREMISES, OR ANY COURSE OF CONDUCT OR DEALINGS WITH LANDLORD, PROPERTY MANAGER, AND/OR THEIR AGENTS. IF THE WAIVER OF JURY TRIAL IS NOT ENFORCEABLE UNDER APPLICABLE LAW, NEITHER PARTY SHALL PRESENT AS A NON-COMPULSORY COUNTERCLAIM IN SUCH LITIGATION ANY CLAIM WHICH IS INCLUDED IN THIS JURY TRIAL WAIVER.  FURTHERMORE, NEITHER PARTY SHALL SEEK TO CONSOLIDATE ANY ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY LITIGATION IN WHICH A JURY TRIAL CANNOT BE WAIVED, AND BOTH PARTIES CERTIFY THAT NO PARTY, REPRESENTATIVE, OR AGENT OF SUCH PARTY, OR OF PROPERTY MANAGER, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.**

24.   **NO ENCUMBRANCES PERMITTED**. Resident has no authority or power to cause or permit any lien or encumbrance of any kind, whether created by an act of Resident, operation of law, or otherwise, to attach to or be placed upon the Premises. Landlord and/or Property Manager have the right at all times to post and keep posted on the Premises any notice which it deems necessary for protection from such liens. Resident covenants and agrees not to suffer or permit any lien of mechanics or materialmen or others to be placed against the Premises with respect to work or services claimed to have been performed for or materials claimed to have been furnished to Resident or the Premises. In case of any such lien attaching or notice of any lien, Resident covenants and agrees to cause it to be immediately released and removed of record. If any such lien is not released and removed within three (3) business days following the date that the notice of such lien is delivered by Landlord or Property Manager to Resident, Resident will be deemed in default of the Lease, and Landlord may immediately take all action necessary to release and remove such lien, without any duty to investigate the validity of the lien, and all costs and expenses, including reasonable attorneys' fees and costs, incurred by Landlord or Property Manager in connection with such lien will be deemed Rent under this Lease and will immediately be due and payable by Resident.



25. **CONSENT, APPROVAL, DETERMINATION OR ELECTION**. Where any provision of this Lease requires Landlord or Property Manager to provide consent, approval, determination, decision, election, or other action (defined collectively as "Landlord Decision") in response to any action or document submitted or furnished by Resident or otherwise, such Landlord Decision shall be in Landlord's (or Property Manager's, as applicable) sole and absolute discretion, unless expressly indicated otherwise. The Landlord Decision relating to any such act, or document shall not be deemed to waive or render unnecessary a Landlord Decision associated with any other acts to be taken or documents to be submitted or furnished, by Resident under this Lease.

26. **FORCE MAJEURE**. Landlord shall not be liable in any way to any Resident or third party for the failure of Landlord to perform or delay in performing under this Lease (and Landlord may suspend or terminate all or any portion of its obligations under this Lease) if such failure to perform or delay in performing results directly or indirectly from or is based upon, any force majeure event, including, without limitation, any acts of God, strikes, lockouts, boycotts, blockades, riots, acts of war, terrorism, rebellion, insurrection, epidemics, pandemics, fire, communication line failures, computer viruses, power failures, earthquakes, or any other similar cause or event beyond the reasonable control of Landlord.

27. **MISCELLANEOUS**

    27.1.   <u>Entire Agreement.</u> All understandings between the parties are incorporated in this Lease and Addenda. Its terms are intended by the parties as a final, complete, and exclusive expression of their agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.

    27.2.   <u>Changes.</u> Neither this Lease nor any provision in it may be extended, amended, modified, altered, or changed except in a writing signed by all parties. This Lease is subject to the law of the state in which the Premises are located and will incorporate all changes required by amendment or successors to such law.

    27.3.   <u>Counterparts.</u> This Lease and any supplement, addendum, or modification, including any copy, may be signed in two or more counterparts, each of which will be deemed an original and all of which taken together shall constitute one and the same agreement.

    27.4.   <u>Severability.</u> If any term, or a portion of a term, of this Lease or its accompanying Addenda, is determined to be illegal, invalid, or otherwise unenforceable by a court of competent jurisdiction, then to the minimum extent necessary to make such term, or portion of a term, of this Lease or its accompanying Addenda legal, valid, or otherwise enforceable, such term or portion of a term shall be limited, construed, or severed and deleted from this Lease or its accompanying Addenda. The remaining portion of such term and the remaining other terms and provisions of this Lease or its accompanying Addenda shall survive, remain in full force and effect, and continue to be binding.

    27.5.   <u>Third Party Beneficiary.</u> Landlord's Property Manager is a third party beneficiary of this Lease. Occupants and guests are intended by the parties to be third-party beneficiaries of this Lease, and agree to be subject to and abide by the terms of this Lease as a condition to having possession and/or access to the Premises.

    27.6.   <u>Successors and Assigns.</u> All of the covenants, conditions, and provisions of this Lease shall inure to the benefit of Landlord and its respective heirs, personal representatives, successors, and assigns. Landlord shall have the right to, either voluntarily, involuntarily, by operation of law, or otherwise, sell, assign, transfer, or hypothecate the Premises and this Lease.

    27.7.   <u>Joint and Individual Obligations.</u> If there is more than one individual who is a "Resident" or guarantor under this Lease, then each individual will be individually and completely (*i.e.*, jointly and severally) responsible



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

and liable for the full and complete performance of all obligations of Resident under this Lease, both individually and jointly with every other Resident, whether or not the individual is in possession of the Premises. Landlord has the right to pursue any claim of any nature for breach of this Lease against any and all of the parties who have signed this Lease, whether a Resident or guarantor, without the necessity of pursuing all of the parties in one action or at the same time.

27.8.   <u>Notices</u>. Any notice provided for or permitted by this Lease to be given by one party to the other shall be deemed given (i) when physically received by personal delivery, (ii) three (3) days after being deposited in United States certified or registered mail, return receipt requested, postage prepaid, (iii) one (1) business day after being deposited with a nationally known commercial courier service (such as FedEx) addressed to the respective parties at the addresses first written above, or at such other address or addresses as the parties may specify from time to time in a written notice, or (iv) sent via email. Resident's address for the purposes of notice shall be the street address for the Premises. Landlord's and Property Manager's address for the purpose of notice shall be PO Box 4300, Scottsdale, Arizona 85261. Resident's email address is as set forth in Section 1.1, above. Property Manager's email address is as set forth in Section 2.2, above.

27.9.   **To the extent any provision in the Lease or any Addenda does not comply with or conflicts with any requirement of applicable law, the applicable law shall govern**.

## 28.   ADDITIONAL NOTICES AND DISCLOSURES TO RESIDENT

28.1.   <u>Lead-Based Paint.</u> The Premises may have been constructed prior to 1978. Housing built before 1978 may contain lead- based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlord will disclose the potential for presence of lead-based paint and/or lead-based paint hazards in the dwelling. Resident will also receive a federally approved pamphlet on lead poisoning prevention, receipt of which Resident hereby acknowledges. In addition, Landlord provided and Resident acknowledges receipt of the disclosures on Landlord's lead disclosure form.

28.2.   <u>Asbestos.</u> The Premises may contain asbestos, a substance known to cause cancer. If the Premises contains asbestos, disturbance or damage to certain interior surfaces may increase the potential exposure to this substance. Resident, Occupant, and their invitees and guests must not take or permit any action which in any way damages or disturbs the ceiling in the Premises or any part thereof, including, without limitation, (i) piercing the surface of the ceiling by drilling or any other method; (ii) hanging plants, mobiles, or other objects from the ceiling; (iii) attaching any fixtures to the ceiling; (iv) allowing any objects to come in contact with the ceiling; (v) permitting water or any liquid, other than ordinary steam condensation, to come into contact with the ceiling; (vi) painting, cleaning, or undertaking any repairs of any portion of the ceiling; (vii) replacing light fixtures; (viii) undertaking any activity which results in vibration which may cause damage to the ceiling; (ix) or altering or disturbing the heating and ventilation system serving the Premises, including any ducting connected thereto. Resident must notify Landlord and its agents immediately in writing of any damage to or deterioration of the ceiling in the Premises or any portion thereof, including flaking, loose, cracking, hanging, or dislodged material; water leaks; stains in the ceiling; or upon the occurrence of any of the events described above.

28.3.   <u>Radon:</u> The Premises may contain radon, a substance known to cause cancer. For Residents in Illinois and Colorado, Landlord provided and Resident acknowledges receipt of the disclosures on Landlord's radon disclosure form and any required attachments to such disclosure form, if applicable.

28.4.   <u>Registered Sex Offenders.</u> Information about specified registered sex offenders is made available to the public via an internet website maintained by the U.S. Department of Justice. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. Resident is encouraged to search such



websites prior to executing this Lease.

28.5.   <u>Credit Reporting Agencies.</u> In addition to favorable payment history, unpaid Rent or unpaid payment for any other amounts due under this Lease are reportable to credit reporting agencies.

28.6.   <u>Release of Information.</u>   Resident understands and agrees that Landlord and/or Property Manager may collect, use, disclose, and otherwise process certain personal information about Resident, its guarantors, and/or any other Occupants of the property.  By initialing below, Resident expressly consents to the collection, use, disclosure, and other processing of personal information as described in Progress Residential's Privacy Policy, available at  https://rentprogress.com/terms-and-privacy/ as may be updated from time to time.

Without limiting the foregoing and as noted therein, Resident authorizes Landlord and Property Manager to release any information regarding Resident or any Occupants as may be required by law or requested by governmental authorities or agencies, law enforcement agencies, or courts, or to vendors, affiliates, and others for marketing and other purposes in accordance with the privacy policy located at https://rentprogress.com/terms-and-privacy/. Resident further authorizes Landlord and Property Manager to release contact information to vendors for the purpose of scheduling preventative maintenance and/or service requests.

By initialing below, Resident also acknowledges Resident has received and been provided an opportunity to review the privacy policy located at https://rentprogress.com/terms-and-privacy/.

Initials:   ,          ,          ,          ,          ,          ,

28.7.   <u>Limitation of Warranties.</u> THIS LEASE CREATES NO WARRANTIES BEYOND THOSE EXPRESSLY STATED IN THIS LEASE OR THOSE THAT MAY NOT BE WAIVED UNDER APPLICABLE LAW.

28.8.   <u>Careful Review.</u>  This Lease is binding upon final acceptance and execution by the parties. READ ALL OF THE TERMS OF THIS LEASE CAREFULLY. If Resident does not understand the effect of this Lease, Resident should consult with an attorney before signing.

[SIGNATURE PAGE FOLLOWS]



**RESIDENT AGREES TO RENT THE PREMISES FROM LANDLORD ON THE TERMS PROVIDED IN THIS LEASE.**

Resident's Signature:

Resident's Printed Name: **Erica Crawford**

Resident's Signature:

Resident's Printed Name: **Skylar Bass**

Resident's Signature:

Resident's Printed Name:

Resident's Signature:

Resident's Printed Name:

Resident's Signature:

Resident's Printed Name:

Resident's Signature:

Resident's Printed Name:

Resident's Signature:

Resident's Printed Name:

**Date:**

**LANDLORD AGREES TO RENT THE PREMISES TO RESIDENT ON THE TERMS PROVIDED IN THIS LEASE.**

**Progress Residential Borrower 17, LLC**

**By:**

**Title:** Authorized Signatory



**LEAD-BASED PAINT ADDENDUM**
**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Residents must also receive a federally approved pamphlet on lead poisoning prevention.*

**Landlord's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

   (i) _____Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

   (ii) __X___ Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the Landlord (check (i) or (ii) below):

   (i) _____Landlord has provided Resident with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

   (ii) __X___Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Resident's Acknowledgment** (initial)

(c) _____Resident has received copies of all information listed above.

(d) _____Resident has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Resident's Signature: _(signed)_                Resident's Signature: _(signed)_

Resident's Printed Name: : **Erica Crawford**    Resident's Printed Name: : **Skylar Bass**

Resident's Signature:                           Resident's Signature:

Resident's Printed Name: :                      Resident's Printed Name: :

Resident's Signature:                           Resident's Signature:

Resident's Printed Name: :                      Resident's Printed Name: :

Resident's Signature:

Resident's Printed Name: :

Landlord:

**Progress Residential Borrower 17, LLC**

By: _(signed) Joseph A. Brunt_

**Title**: Authorized Signatory



### UTILITY AND SERVICES ADDENDUM

This document will serve as an addendum and supplemental agreement (the "**Utility and Services Addendum**") regarding the attached Lease between Landlord and Resident for the Premises. Capitalized terms used in this Utility and Services Addendum have the meanings given to them in the Lease unless specifically defined in this Utility and Services Addendum.

1. <u>Utility Responsibility</u>. The responsibility of Resident to maintain Utility accounts in Resident's name will depend on the location of the Premises and other factors. Please read the following information carefully.
   a. Except for any Premises located in North Carolina, **by the first day of the Lease Term** Resident must establish accounts in Resident's name for <u>**electricity**</u> and any utilities that are bundled with electricity by the electricity provider. Natural gas, trash removal, water, wastewater/sewage, and stormwater will remain in the Landlord's name and be billed through the Conservice Utility Billing Program, detailed below.
   b. Resident shall be solely responsible for opening and managing accounts for any other utilities (except natural gas, trash removal, water, wastewater/sewage, and stormwater) including but not limited to propane and heating oil, available at the Premises.
   c. If the Premises is located in North Carolina, water and sewer service for multi-unit buildings will be billed by the service provider to Landlord and then allocated to Resident based on sub-metering of all Resident's water use, using rates approved by the North Carolina Utilities Commission.
   d. If the Premises is located in North Carolina, the local trash service provider calculates the monthly trash charges for each multi-unit building and bills Landlord directly for such charges.   Resident will be billed the monthly trash charges calculated by the provider for Resident's unit.
   e. If the Premises is located in North Carolina, Resident will be billed Resident's share of the monthly stormwater charges billed to the community.   The monthly stormwater expense will be divided equally among all units.
   f. If this Lease is an extension or renewal from a previous Progress Residential® lease dated on or before September 20, 2017, Resident may, but is not required to, place electricity and any utilities that are bundled with electricity in Resident's name.
   g. If the Premises is located in a deregulated area for gas, Landlord will select the deregulated provider(s). If Resident desires to select an alternative provider, Resident must notify Landlord and Conservice®, and Conservice® will facilitate such selection with Resident.
   h. If the Premises shares a meter or any utility service with another Progress Residential unit (i.e., townhomes, 2-4 unit residences), the utility charges will be allocated according to the rentable square foot of each sharing the charges.

2. <u>Payments</u>.
   a. For any Utilities identified in this Addendum to be established in Resident's name, Resident will make payments directly to the Utility service providers for those services.
   b. Any Utilities kept in the Landlord's name will be billed on a monthly basis through the Landlord's third party utility billing vendor ("Utility Billing Vendor"). Utility Charges, set-up fee, and services fees will be added by Landlord to Resident's ledger, and Resident must pay these charges as Rent as defined under the Lease.
      i. Utility Set-up fee. Where allowed by local regulation, Resident will pay a onetime utility account set-up fee in the amount of $30 on the first bill. This fee is for administration, billing, overhead, and similar expenses and charges incurred by Landlord for establishing the new utility accounts.
      ii. Monthly Utility Charges. Utility Billing Vendor will provide a monthly electronic invoice to Resident's email account provided, which will identify the charges due. Utility Billing Vendor may estimate any bill based on prior bill amounts and/or usage.
      iii. Utility Management Fees. Each monthly bill will include a Utility Management Fee in addition to the Utility Charges. Unless the Premises is located in North Carolina this monthly Utility Management Fee which is



for administration, billing, overhead, and similar expenses and charges incurred by Landlord for providing billing services will be $8.99. If the Premises is located in North Carolina, the Utility Management Fee will be as follows:

1. $3.75 (or any higher amount as approved by the North Carolina Utilities Commission) for water and sewer billing for residents in North Carolina and if no utilities are maintained by the Landlord.
2. $0.75 for trash billing for residents in North Carolina.

3. <u>Utility Defaults</u>
   a. <u>Failure to Establish Accounts</u>. Failure to establish accounts in Resident's name as detailed in this Addendum will result in a charge of $50.00 (the "Utility Default Fee") as liquidated damages for the violation. The Utility Default Fee will be charged by the end of the fourth (4th) day of the Lease Term and for each month thereafter in which one or more utility accounts remain in Landlord's name for any part of the billing cycle. The Parties agree that the $50.00 charge is a reasonable pre-estimate of the probable loss to Landlord for administering and managing utilities that Resident fails to put in Resident's name.  In addition to paying the Utility Default Fee, Resident must reimburse Landlord for all Utility Charges incurred by Landlord during any portion of the Lease Term in which the utilities are not in Resident's name. The Utility Default Fee and Utility Charges will be deemed Rent under this Lease, and Resident's failure to pay the Utility Default Fee and Utility Charges when due will constitute a default under the Lease.
   b. <u>Failure to pay Utility Charges</u>. Utility Charges and management fees will be deemed Rent under this Lease and Resident's failure to pay when due will constitute a default of the Lease. If Resident fails to promptly pay all Utility Charges, Landlord may remove its name from the Utility account(s). Resident must make payment in full to Landlord or Utility Billing Vendor (as directed on the bill) of the Utility Charges prior to the due date listed on each bill. Landlord and Resident agree that the actual cost to Landlord and/or billing provider when Resident fails to pay the utility bill on time is difficult or impossible to ascertain, but the parties agree that Landlord and Utility Billing Vendor, in the event of a late payment, incur certain costs, such as processing, enforcement, accounting expenses, and late charges imposed on Landlord.

4. <u>Generally</u>.
   a. "Conservice®" is the Utility Billing Vendor providing support for the Premises as of the Effective Date. Resident may contact Conservice as follows: Service@Conservice.com or 866-947-7379. Landlord reserves the right to change such Utility Billing Vendor from time to time and in Landlord's sole and absolute discretion.  Landlord shall provide notice to Resident in the event the Utility Billing Vendor changes.
   b. If any Utilities are not separately metered, Resident must pay Resident's proportional share, as reasonably determined and directed by Landlord.
   c. All Utility-related charges assessed to the Premises may be used to calculate the amount charged to Resident, including, but not limited to, stormwater charges, utility related charges contained on tax bills (stormwater, flood control, water quality, standby charges, etc.) and all miscellaneous charges contained on the utility bills received from the local utility providers.
   d. Upon receiving notice of intent to vacate the Premises, Landlord will apply estimated Utility Charges to Resident's account through the move-out date. Estimated charges will be adjusted after actual charges are received by the Landlord, which may occur after the move-out date. All estimated Utility Charges are due and payable prior to move-out.

5. <u>Authorization to review and share utility account history</u>.  Resident authorizes Landlord, Property Manager, and/or their designated representatives to obtain records on demand documenting consumption of energy or natural resources for the Premises, for the entire term of the Lease.  Such data will be kept confidential to the extent required by law and will be used only for purpose of complying with governmental regulations, improving the energy efficiency of the Premises, and other internal purposes as permitted by law.



This Utility and Services Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

Initials: EC , SB , , , ,



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

**RENTERS INSURANCE PROGRAM ADDENDUM**

Resident is required to maintain renters liability insurance ("**Renters Insurance**") with a personal liability limit of at least $100,000 through the Lease Term using the professional vendor of Resident's choice. Evidence of Resident's Renters Insurance must be submitted to Get Covered at Progress.PolicyVerify.io prior to the Lease Start Date and must include the following information:

1.    A copy of Resident's Renters Insurance certificate of coverage or declaration page
2.    The names of all Residents on the Lease
3.    The Landlord listed as an "Additional Interest" with notices to Alerts – Progress Residential, PO Box 660121, Dallas, TX 75266
4.    Policy start and end dates
5.    Policy number
6.    Personal liability coverage in the minimum of $100,000

Any Resident that does not submit and maintain Renters Insurance in accordance with the above requirements shall be required to pay a monthly Insurance Exemption Fee to Landlord as additional Rent and shall be automatically enrolled in Landlord's Renters Insurance Exemption Program ("**Exemption Program**"). Under the Exemption Program, Resident will be charged liquidated damages in the amount of $14.95 a month as additional Rent and will be exempt from the Renters Insurance requirement. The Renters Insurance Exemption Program is not a damage deposit and does not provide insurance for personal property/belongings or liability for injury or loss or damage to others. The Parties agree that the $14.95 charge is a reasonable pre-estimate of the probable loss to Landlord in the event Resident fails to obtain or maintain insurance.

Once Resident is enrolled in the Exemption Program after failing to obtain Renters Insurance, Resident can obtain Renters Insurance at any time and be removed from the Exemption Program, which will discontinue further monthly Insurance Exemption Fees. To do so, Resident must submit a copy of Resident's Renters Insurance policy declarations page or certificate of coverage providing for the above requirements via Progress.PolicyVerify.io or email at Progress@PolicyVerify.io. If Resident provides proof of coverage on or before the fifteenth (15th) day of the month, the Insurance Exemption Fee will be discontinued beginning the following month. If Resident provides proof of coverage after the fifteenth (15th) day of the month, the Insurance Exemption Fee will be charged for the following month and will be discontinued beginning the next month after. If Resident's Renters Insurance Policy lapses, expires, or is terminated, Resident will be automatically enrolled in the Exemption Program, and the Insurance Exemption Fee will be applied starting in the month the Policy is no longer active.

Resident may also purchase Renters Insurance from Get Covered, Landlord's preferred insurance provider. For a Renters Insurance quote from Get Covered, please visit them online at Progress.PolicyVerify.io. Once purchased, Get Covered will automatically notify Landlord, Resident will no longer be enrolled in the Exemption Program, and the Insurance Exemption Fee will not be applied as specified above.

This Renters Insurance Program Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

Initials: EC , SB , , , ,



### GUARANTOR'S ADDENDUM (If Applicable)
### GUARANTEE OF PAYMENT

In consideration of the execution of the Lease by Landlord and for other valuable consideration, receipt of which is hereby acknowledged, the undersigned (individually and collectively, if more than one, "**Guarantor**") hereby (i) guarantees unconditionally to Landlord and Landlord's agents, successors, and assigns, the full performance of the Lease, including the prompt payment of all rent, any and all court costs and attorney fees incurred in enforcing the Lease, and all other sums that become due pursuant to the Lease; (ii) consents to any changes, modifications, or alterations of any term in the Lease agreed to by Landlord and Resident and acknowledges that such changes, modifications, or alterations bind Guarantor even if Guarantor is not party thereto; (iii) waives any right to be informed or noticed about any default by Resident; (iv) waives any right to require Landlord or Landlord's agents, successors, or assigns to proceed against Resident for any default occurring under the Lease before seeking to enforce this Guarantee of Payment; (v) waives any right to trial by jury in any claim related to the Lease or this Guarantee of Payment; and (vi) acknowledges and represents that it has received a direct and substantial benefit from the Lease.

**GUARANTOR (PRINT NAME):** _____

**GUARANTOR (SIGN NAME):**      _____

**ADDRESS:** _____

**CITY:** _____ **STATE:** _____ **ZIP:** _____

**TELEPHONE:** _____ **EMAIL:** _____


**GUARANTOR (PRINT NAME):** _____

**GUARANTOR (SIGN NAME):**      _____

**ADDRESS:** _____

**CITY:** _____ **STATE:** _____ **ZIP:** _____

**TELEPHONE:** _____ **EMAIL:** _____


**IF ONLY ONE PERSON SIGNS THIS GUARANTEE OF PAYMENT, AND THAT PERSON IS A RESIDENT OF ARIZONA, TEXAS, CALIFORNIA, IDAHO, LOUISIANA, NEVADA, NEW MEXICO, WASHINGTON OR WISCONSIN, SUCH PERSON REPRESENTS AND WARRANTS THAT HE OR SHE IS UNMARRIED.**

Initials: EC , SB , , , ,



**Repair Services Cost Sheet Addendum**

Repairs or services provided by Landlord, Property Manager or its agents for damage due to the misuse, negligence, action or inaction of Resident, Occupant, their guests or invitees will be charged to Resident (or charged against the Security Deposit). Charges and fees include, but are not limited to, the following:

| | |
|---|---|
| Re-inspection due to Resident violation | $35 for 1st re-inspection and $50 each thereafter |
| Replace missing smoke detector | $50 each |
| Replace missing smoke detector battery | $12 each (includes $10 fine) |
| Replace light bulbs | $5 each |
| | |
| Replace, re-string, or re-hang window blinds | $75 each |
| Re-key home (keys not returned at move-out) | $100 per door |
| Garage Remotes | $50 per remote |
| | |
| Clogged toilet | $85 minimum |
| Tub clog | $75 minimum |
| Drain clog | $75 minimum |
| | |
| Broken single pane window | $20/square foot |
| Broken double pane window | $40/square foot |
| Missing or broken screen(s) | $70 |
| Showerhead | $18.00 |
| Towel Bar | $25.63 |
| Drywall | $13 /4x8 ½ inch sheet |

Cabinets

| | |
|---|---|
| Door | $28.33 |
| Full Cabinet | $155.20 |
| Cabinet Knobs (Round) | $3 |
| Cabinet Drawer Pull | $4 |
| Soft Close Cabinet Hinge | $18 |
| Latch | $3 |

| | |
|---|---|
| Landscaping clean up service | $150 minimum |
| Sprinkler head repair | $25 each |
| | |
| Debris or trash clean-up (including abandoned possessions, broken furniture, etc.) | Truck fee $50 per cubic yard |
| | |
| Partial Clean | $35 per room minimum |
| | |
| Clean oven or refrigerator | $60 each |
| | |
| Carpet Replacement | $17.50 per sq. yd |

© 2025 Progress Residential                Residential Lease (2025.v1)                29



Painting (due to holes in wall or other damage)          $145 per room

Resident caused Pest Control service                     $95 minimum per treatment

Labor Costs for all Services, Repairs and Replacements   $75/hour

The above costs are minimum fees, may be exclusive of labor costs.  Charges may be subject to state and local taxes. Charges subject to change without notice should costs increase.

Initials: FC   , SB ,        ,        ,        ,        ,



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

**Mold and Moisture Addendum**

This document will serve as an addendum and supplemental agreement (the "**Mold Addendum**") regarding the attached Lease between Landlord and Resident for Premises. Capitalized terms used in this Mold Addendum have the meanings given to them in the Lease unless specifically defined in this Mold Addendum. The parties agree that the following provisions modify and supersede those found in the Lease:

1.   <u>Resident Covenants and Acknowledgements</u>. Resident acknowledges and agrees that, as a part of the Lease, Resident has a responsibility to maintain the Premises in such a manner to inhibit mold and mildew growth and that Resident's agreement and promise to do so is a material consideration for Landlord's agreement to enter into the Lease and rent the Premises to Resident. As such, Resident promises, covenants and agrees to do the following:

   A.   Keep the Premises clean and regularly dust, vacuum, and mop, particularly the kitchen, bathroom(s), carpets, and floors.

   B.   Immediately remove any and all visible moisture accumulation and/or spillage on counter-tops, windows, windowsills, walls, ceilings, floors, and other surfaces as soon as reasonably possible. Periodically clean and dry the walls and floors around sink(s), bathtub(s), shower(s), toilet(s), windows, and patio doors using a common household disinfecting cleaner.  Blot dry spills on carpeting.

   C.   Use household cleaners designed to prevent or eradicate any mildew and mold on any hard, non-porous surfaces.

   D.   Do not block, impede, or cover any heating, ventilation, or air conditioning ducts.

   E.   Utilize the air-conditioning to maintain humidity levels that are not conductive for the growth of mold or mildew.

   F.   Utilize heating systems in moderation, and so as to not increase potential for mold and/or mildew growth.

   G.   Keep Premises properly ventilated by periodically opening windows to allow circulation of fresh air during dry, but only during non-humid, weather days.

   H.   Keep windows and doors closed in damp, humid, or rainy weather.

   I.   Open blinds or curtains to allow light into Premises.

   J.   Do not overfill closets or storage areas in such a way to restrict airflow.

   K.   Keep closet doors ajar.

   L.   Avoid excessive use of indoor plants, and only water indoor plants outdoors.  Do not over water indoor plants.

   M.   Use the bathroom fan when bathing or showering and allow the exhaust fan to run for at least twenty (20) minutes after bathing or showering is completed with the door closed, or until all excess moisture has been vented from the bathroom. Keep the shower curtain inside the tub or shower or fully close the shower doors when showering or bathing. After taking a shower or bath: (i) wipe moisture off of bathtub/shower fixtures, walls, doors, floors; and (ii) hang towels and bath mats so they will completely dry out.

   N.   Use ceiling fans if present.

   O.   Use the exhaust fan in the kitchen when cooking or while running the dishwasher and allow the fan to run until all excess moisture has been vented from the kitchen.

   P.   Clean the lint filter in the clothes dryer after each use and promptly report any damage to the vent connection.  If condensation forms in the area, wipe it dry.  Dry damp clothing as soon as possible.

   Q.   Remove garbage regularly.

   R.   Immediately throw away or remove any moldy or rotting food.

   S.   Regularly look for leaks in washing machine and refrigerator hoses, faucets, and discharge lines, especially if the leak is large enough to infiltrate into nearby walls.

   T.   Avoid air drying dishes.

   U.   Do not hang-dry wet clothes indoors.

   V.   Permit Landlord, with appropriate notice, to enter the Premises to make inspections and, if necessary,



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

repairs to the Premises regarding water intrusion, excess moisture, and mold or mildew growth.

2.  <u>Small Areas of Suspected Mold</u>. If intermittent suspected mold or mildew is observed in a limited and small area (less than one (1) square foot in size) on a hard, non-porous surface, such as ceramic title, Formica, vinyl flooring, plastic, or metal, and the mold or mildew does not appear to be the result of an ongoing leak or excess moisture problem, Resident may utilize his or her own discretion or judgment to remove the mold or mildew with the use of household cleaners designed to remove and eradicate mold or mildew within twenty-four (24) hours of it first appearing. However, in the event that Resident does not wish to do so, is unsure whether the signs of suspected mold or mildew are common or are a sign of a potential issue, or in the event the mold or mildew reoccurs following an attempt to remove and eradicate the mold or mildew, Resident agrees to immediately report the condition to Landlord, in writing, within twenty-four (24) hours of the condition first appearing.

3.  <u>Written Reports</u>.   Resident will immediately notify Landlord, **in writing**, within **twenty-four (24) hours** of Resident's suspicion or observation of any the following conditions:

   A.    Visible or suspected leaks, water damage, water intrusion, excess moisture.
   B.    Visible or suspected mold or mildew growth, unless Resident fully complies with Section 2 above.
   C.    Windows or doors that do not open or close properly.
   D.    Musty or moldy odors.
   E.    Shower, bathroom, sink, or toilet overflows.
   F.    Leaky faucets, plumbing, pet urine accidents.
   G.    Discoloration of walls, baseboards, doors, window frames, or ceilings.
   H.    Moldy clothing.
   I.    Refrigeration or air condition drip pan overflows.
   J.    Any malfunctioning in the heating, ventilation, or air conditioning system.
   K.    Moisture dripping from or around any vents or air condition condenser lines.
   L.    Loose, missing, or failing grout or caulk around bathtubs, showers, sinks, faucets, countertops, or clothes dryer vent leaks.
   M.    Overflows from bathroom, kitchen, or laundry facilities.
   N.    Any and all excess moisture accumulation.
   O.    Health issues that Resident believes may be related to the air quality within the Premises.

4.  <u>Violation of Mold Addendum</u>. Resident's failure to comply with the terms and conditions set forth in this Mold Addendum shall constitute a material breach of the Lease, and Landlord shall be entitled to exercise all of Landlord's rights and remedies available at law or in equity. A material breach of this Mold Addendum includes, but is not limited to, Resident's failure to notify the Landlord, in writing, of the conditions set forth in Paragraph 2 above, within twenty-four (24) hours of the condition first arising. In the event Landlord determines, in Landlord's sole and absolute discretion, that Resident is not maintaining the Premises in a manner consistent with this Addendum or the Lease, Landlord may, at Landlord's sole and absolute discretion, terminate the Lease and seek any and all remedies available to Landlord under the Lease and this Addendum. If Resident fails to comply with this Mold Addendum, Resident can be held responsible for property damage to the Premises and any health problems that may result.

5.  **Release, Indemnification, and Hold Harmless. Resident agrees to release, indemnify, discharge, hold harmless, and forever discharge the Landlord, and the Landlord's affiliates, agents, employees, successors, and assigns, for any and all liabilities, losses, claims, causes of action, damages, or injuries to person or property of any kind resulting directly or indirectly from Resident's failure to comply with the terms and conditions of the Lease and/or this Mold Addendum. This term does not apply to damages arising from Landlord's sole negligence or from Landlord's failure to discharge a duty required under applicable law.**

This Mold Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

Initials:  EC  ,  SB  ,        ,        ,        ,

Document digitally signed using RentCafe eSignature services. Document ID: 11237506

**CONCESSION ADDENDUM**

This is an addendum and supplemental agreement (the "Addendum") to the Lease executed between the undersigned Resident and Landlord.  Capitalized terms have the meanings given to them in the Lease unless specifically defined in this Addendum.

By signing this Addendum, Resident acknowledges the receipt of a concession in the amount of $ **.00** in connection with signing the Lease and/or one or more promotions offered by Landlord with respect to the Lease (the "Concession").

| Start Date | End Date | Concession Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

The Concession identified above will be applied as a credit to the charges on Resident's account.  Credits will be applied as described in Landlord's promotion, which may include credits considered as Rent under the Lease.

In the event Resident defaults on this Lease or terminates the Lease before the end of the Lease Term, Landlord may take action on Concessions offered to Resident as specified in Landlord's promotion and permitted under applicable law.

This Addendum is attached to the Lease and incorporated therein.  Other than as expressly amended herein, all other terms and conditions of the Lease shall remain in full force and effect.

Initials: EC   , SB ,        ,        ,        ,



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

**BED BUG ADDENDUM**

This document will serve as a Bed Bug Addendum and supplemental agreement (the "Addendum") regarding the attached Lease between Landlord and Resident for the Premises. This Addendum sets forth the agreement of Landlord and Resident for prevention and treatment of bed bugs at the Premises. Capitalized terms used in this Addendum have the meanings given to them in the Lease unless specifically defined in this Addendum. The Parties agree that the terms of the Addendum modify and supersede those in the Lease:

1.  **Inspection**. Landlord inspected the Premises prior to the beginning of the Lease Term and observed no evidence of bed bugs or a bed bug infestation. Resident agrees to inspect the Premises for bed bugs **within forty-eight (48) hours** after move-in/renewal and notify Landlord **in writing** of any bed bugs or a bed bug infestation. Resident's failure to provide written notice of bed bugs to Landlord **within forty-eight (48) hours** after move-in  is conclusive evidence that none existed as of the date Resident took possession of the Premises.

2.  **Bed Bug Disclosure**. Resident agrees that if Resident has previously lived anywhere that has had a bed bug infestation, Resident will notify Landlord of the infestation prior to taking possession of the Premises. If Resident has previously lived anywhere that has had a bed bug infestation, Resident further agrees that prior to taking possession of the Premises that Resident has properly and effectively treated all personal property, including furniture, mattresses, luggage, and clothing, with a duly licensed pest control professional, and Resident's property is free from any bed bug infestation. If Resident discloses a previous experience of bed bug infestation, Resident shall provide Landlord with documents evidencing such treatment, and Landlord has the right to inspect Resident's property prior to bringing it into the Premises. Any charges for such inspection shall be paid by Resident as additional Rent.

3.  **Duty to Maintain; Signs of Bed Bug Infestation.** Resident agrees that Resident has the sole responsibility and duty to maintain the Premises in a manner which prevents the presence or infestation of bed bugs at the Premises, and that Landlord has no such duty under the Lease or applicable law. During the Lease Term, Resident agrees to monitor the Premises and all personal property for signs of any possible bed bug infestation, which may include but is not limited to the following:
    a.  Small red/brown fecal spots on mattresses, box springs, bed frames, mattress, linens, upholstery or walls;
    b.  Molted bed bug skins, white, sticky eggs or empty eggshells;
    c.  Heavily infested areas may have a characteristically sweet odor; or
    d.  Red, itchy bite marks on skin, especially on legs, arms and other body parts exposed during sleep (although not all individuals show signs of bites even though such may have occurred).
    For more information, Resident may review the website and materials issued by the United States Environmental Protection Agency and the National Pest Management Association.

4.  **Notification, Access for Inspection, and Treatment.** Upon suspicion or discovery of a bed bug infestation at the Premises or in any personal property, including furniture, mattresses, luggage and clothing, Resident agrees to **immediately notify Landlord, in writing**. Resident must allow Landlord and its pest control agents access to the Premises at reasonable times in order to inspect for or treat bed bugs as provided by law. Resident, Occupants, and their guests, family members, and invitees must cooperate and shall not interfere with inspections or treatments. Upon confirmation of a bed bug infestation at the Premises, including in any of Resident's or Occupants' personal property, Resident agrees that Landlord shall have the sole discretion to select the method of treating the Premises, including the home and personal property located inside. Resident shall have the responsibility to treat any and all personal property, including furniture and clothing, in a manner that is acceptable by Landlord in its discretion. If Resident fails to cooperate, including with any inspection or treatment, or otherwise takes action that puts the Premises at risk for an infestation of bed bugs, Resident shall be deemed to be in default of the Lease and Landlord shall have the right to immediately terminate the Lease.



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

5. **Liability.**  If Resident failed to timely notify Landlord of any actual or suspected bed bugs within the time period noted in Paragraph 1, above, and it is later determined by Landlord, in Landlord's discretion, that a bed bug infestation has occurred at the Premises, which was not caused by Landlord, Resident shall be fully responsible for all related damages, costs, and fees, including those related to inspection, extermination, treatment, and cleaning of both the Premises and any impacted personal property of Resident and any resulting alleged personal injuries to Resident or Occupants or any of their guests, family members, or invitees.  Such liability may occur during or after the expiration of the Lease or Lease Term.  If Resident fails to pay Landlord for any costs Resident is liable for, Resident shall be deemed to be in default of the Lease and Landlord shall have the right to immediately terminate the Lease.

6. **Controlling Provisions.**  In the event of a conflict between the terms or provisions of this Addendum and the Lease, the terms of this Addendum shall control.

This Bed Bug Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

Initials: EC  , SB ,          ,          ,          ,



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

**PET ADDENDUM**

This document will serve as an addendum and supplemental agreement (the "Pet Addendum") regarding the attached Lease between Landlord and Resident for the Premises. Capitalized terms used in the Pet Addendum have the meanings given to them in the Lease unless specifically defined in the Pet Addendum.

1. Permitted Pets. Except as described below, acceptable types of pets include dogs, cats, other non-caged animals, caged birds, caged animals, (such as hamsters and lizards), and fish. Livestock, farm animals (including potbellied pigs), and poisonous, dangerous, or exotic animals (such as snakes and spiders) are prohibited. This term is subject to applicable law regarding a verified service or assistance animal, which are permitted. However, if a particular service or assistance animal behaves in a way that poses a direct threat to the health or safety of others, has a history of such behavior, or is not under the control of the handler, that animal may be excluded. Except for the conditions stated above, any animal may be deemed unacceptable by Landlord if such animal is not considered appropriate for the rental situation. No pet other than those listed here are authorized on the Premises without Landlord or Property Manager's written consent. All pets must be licensed in accordance with applicable law.

2. The following types of dogs are defined as "Restricted Breeds":
   - American Pit Bull Terrier
   - American Staffordshire Terrier
   - Staffordshire Bull Terrier
   - Bull Terrier
   - Rottweiler
   - Any mix containing the above breeds
   - Wolfdog
   - Any non-domestic breed

Restricted Breeds are NOT permitted on or about the Premises at any time, and failure to comply with this restriction shall be deemed a lease violation. This provision does not apply to verified service or assistance animals.

_EC_ , _SB_ , ____ , ____ , ____ , ____        Resident acknowledges and agrees that Restricted Breeds are not permitted on or about the Premises, and failure to comply with this restriction shall be deemed a Lease violation.

3. Maximum Number of Pets. Resident shall not be permitted to have more than three (3) Authorized Pets ( as defined in Section 4) at any time. The provision does not apply to caged pets or verified Service Dogs or verified assistance animals.

_EC_ , _SB_ , ____ , ____ , ____ , ____        Resident acknowledges and agrees that no more than three (3) Authorized Pets are permitted at the Premises.

Resident may permit the pet(s) described in Section 4 on the Premises, but only according to any applicable HOA rules and regulations, or the terms of the attached Lease and this Pet Addendum:

1. **Authorized Pets**. Resident is authorized to keep the following dogs, cats, and/or other non-caged animals(defined as "Authorized Pets"):

| Type (cat, dog, etc.) | Name |
|---|---|
| Dog | Cooper |



| | |
|---|---|
| | |
| Verified Service or ESA: | |
| Verified Service or ESA: | |
| Verified Service or ESA: | |

2. **Pet Rent**. Resident shall pay an additional Rent in the amount of $72 per month for one (1) pet; $144 per month for two (2) pets and $199 per month for three (3) pets. Based on the authorized pets listed above Resident shall pay **$72.00** per month in additional Rent. This additional Rent shall not apply to verified service or assistance animals.

3. **Resident Liability** Resident's liability is not limited by payment of the additional Rent. Resident shall be liable for all injury, harm, or damage caused by any pet to the Premises or any person or property, and agrees to indemnify and hold Landlord harmless from the same, **except that Resident will not indemnify Landlord for Landlord's sole negligence or for Landlord's failure to discharge a duty required under applicable law.** Resident shall be responsible for the costs of, among other things, all cleaning (including professional carpet cleaning) when damage caused by the pet extends beyond ordinary wear and tear, as well as any required, de-fleaing, and deodorizing of the Premises, and repairs to damage to carpet, flooring, doors, walls, shades, blinds, windows, screens, appliances, cabinets or any other part of the Premises, including the landscaping. If items cannot be cleaned or repaired to Landlord's satisfaction, Resident will be responsible for replacing them completely. Payment for all damages, repairs, cleaning, or replacements are due immediately upon demand of Landlord.

4. **Additional Pet Requirements**.

   A. Resident shall be responsible for complying with all laws, statutes or regulations of any applicable jurisdiction, as well as the rules of any applicable HOA with regard to pets.

   B. Resident must clean and properly dispose of all pet waste, both inside and outside of the Premises, on a daily basis. No excrement is to remain on the grounds.

   C. Pets should not make excessive disturbing noises. Disturbing noises include continued and repeated howling, barking, whining, squawking or other utterances that cause unreasonable annoyance, disturbance, or discomfort to neighbors or others in close proximity to the pet.

   D. If, in the judgment of Landlord, a pet is a nuisance or has caused damage or injury to any person or property, Resident agrees to remove the pet from the Premises permanently upon five (5) days written notice from Landlord or Property Manager.

   E. In some circumstances, an animal control officer may be permitted to enter the Premises and remove a pet, if, in Landlord's discretion, (i) the pet(s) have been abandoned; (ii) the pet(s) have been left in the Premises for an extended period of time without food or water; (iii) Resident has failed to care for a sick pet; (iv) the pet has become a nuisance or caused damage or injury to any person or property; or (v) a dog identified as a Restricted Breed is on or about the Premises. Any costs associated with the removal of a pet shall be borne by Resident.

5. **Changes in Pet Policy**. Landlord may change any term of this Addendum after thirty (30) days' notice to Resident; provided, however, if such change means that Resident's pet(s) will no longer be allowed, then Resident's pet(s) will nonetheless be permitted (grandfathered) until the expiration of Resident's then-current Lease Term.

This Pet Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

38

© 2025 Progress Residential          Residential Lease (2025.v1)

**RENTER'S CHOICE AMENDMENT AND ADDENDUM**

This document (the "Renter's Choice Addendum") will serve as an amendment and addendum and supplement and modify the agreement regarding the attached Lease between Landlord and Resident for Premises located in the State of GA. Capitalized terms used in this Renter's Choice Addendum have the meanings given to them in the Lease unless specifically defined herein.  This Renter's Choice Addendum shall control to the extent there is a conflict between the Lease and this Renter's Choice Addendum.  The parties agree that the following provisions modify and supersede those found in the Lease:

1.   **Section 4.2 When Payable; Priority of Payments** is amended as follows:
     **When Payable; Priority of Payments.** Monthly Rent is payable in advance on or before the first (1st) day of each calendar month and delinquent if not **received** by the second (2nd) day of each calendar month. All payments made by Resident to Landlord under this Lease will, without regard to their characterization or earmarking by Resident, be allocated by Landlord in the following order of priority: (i) to payment of Installment Payments of Security Deposit outstanding, if any; (ii) to payment of Security Deposit Waiver Fee in the event Resident has elected to participate in the Security Deposit Waiver Program; (iii) to late charges and amounts owed from maintenance charge-backs, fines caused by Resident, and other Resident actions or inactions in violation of this Lease; (iv) to delinquent Rent; and (v) to current Rent due and payable.

2.   **Section  6 Security Deposit** is amended to add:

     a.   Resident acknowledges that Landlord presented the option to pay the Security Deposit in full, in installments or to participate in the Security Deposit Waiver Program.

     

     b.   Resident has elected to satisfy the Security Deposit requirement as follows:

          (**X**)  Resident has paid the Security Deposit in full.

          () Resident will pay the Security Deposit in  equal monthly installments of **$**, due on the same day and in the same manner as Monthly Rent.

          () Resident has elected to participate in the Security Deposit Waiver Program and will pay a Security Deposit Waiver Fee, payable in equal monthly installments of **$N/A**, due on the same day and in the same manner as Monthly Rent.



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

3. **Security Deposit Waiver Program.**
   a) Resident understands and agrees to the following terms in connection with the Security Deposit Waiver Program: Security Deposit Waiver Fees are made in lieu of a Security Deposit and are not refundable to Resident under any circumstances.
   b) Resident acknowledges that electing to pay the Security Deposit Waiver Fee shall not otherwise modify, waive, or alter any other terms or conditions of the Lease, which shall remain in full force and effect unless otherwise agreed upon in writing by the parties.
   c) Resident understands that a failure to remit any Security Deposit Waiver Fee when due will be deemed a material violation of the Lease which may result in adverse action, including the possibility of eviction.
   d) Resident shall continue to be responsible in full for any amounts due to Landlord under the Lease, including any charges due at move-out or for damages to the Premises and that the Landlord  shall have the right to assign and transfer its collection rights and activities for any unpaid rent and damage charges to any party.
   e) The Security Deposit Waiver Fee is NOT Resident's insurance, Resident is NOT purchasing any type of insurance from the Landlord or any third-party and Resident is not the beneficiary of any insurance program.
   f) Neither the Landlord  nor any third-party provides any insurance which covers the Resident.
   g) Resident has had an opportunity to ask questions about the Security Deposit Waiver Program, and desires to participate in the program with a full understanding of its functions, purposes, and limitations.


This Renter's Choice Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.  If there is any inconsistency between the Lease and this Renter's Choice Addendum, this Renter's Choice Addendum shall control.



RESIDENT[S]:

Resident's Signature: _Erica Crawford_
Resident's Printed Name: **Erica Crawford**

Resident's Signature: _Skylar Bass_
Resident's Printed Name: **Skylar Bass**

Resident's Signature:
Resident's Printed Name:

Resident's Signature:
Resident's Printed Name:

Resident's Signature:



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

Resident's Printed Name: _

Resident's Signature:
Resident's Printed Name: _

Resident's Signature:
Resident's Printed Name: _

Landlord Signature

**Progress Residential Borrower 17, LLC**

**By:**

**Title:** Authorized Signatory



## STATE SPECIFIC ADDENDUM – GEORGIA

This document will serve as an addendum and supplemental agreement (the "Georgia Addendum") regarding the attached Lease between Landlord and Resident for Premises located in the State of Georgia. Capitalized terms used in this Georgia Addendum have the meanings given to them in the Lease unless specifically defined in this Georgia Addendum.  The parties agree that the following provisions modify and supersede those found in the Lease:

1. <u>Disclosure of Ownership</u>. At or before the commencement of the Lease, Landlord is required to provide to Resident in writing the names and addresses of (i) the owner of the Premises or a person authorized to act on behalf of the owner to receive notice, and (ii) the person authorized to manage the Premises. In the event that there is a change in any of these names and addresses, Landlord shall advise Resident of the change within 30 days after the change, either in writing or by posting notice in a clear place. This notice is provided on the front page of this lease

2. <u>Escrow Disclosure</u>.  Security deposits are deposited in an escrow account with BankUnited, N.A..

3. <u>Notice of Propensity of Flooding</u>. To Landlord's knowledge, neither the Premises nor any portion thereof has flooded in any material respect at least (3) three times within the last five (5) years immediately preceding the execution of this Lease. Flooding is defined as the inundation of a portion of the living space caused by an increased water level in an established water source such as a river, stream, or drainage ditch, or as a ponding of water at or near the point where heavy or excessive rain fell.

4. <u>Move-In Inspection</u>. Prior to Resident tendering a Security Deposit, Landlord will provide Resident with a document itemizing any existing damages to Premises. Prior to taking occupancy, Resident will be given the right to inspect the Premises to ascertain the accuracy of the document. Both Landlord and Resident shall sign the document. If Resident refuses to sign the list, Resident shall state specifically in writing the items on such list to which he or she dissents and shall sign such statement of dissent. Resident shall be entitled to retain a copy of the document. Resident acknowledges that Resident has carefully inspected the Property in which the Premises are located and is familiar with same.

5. <u>Move-Out Statement</u>. Within three (3) business days after the date of termination of occupancy, Landlord will provide Resident with a statement ("Move-Out Statement") listing the damage done to Premises which is the reason for the retention of the Security Deposit and the estimated dollar value of such damage. If Resident terminates occupancy without notifying Landlord, Landlord may make a final inspection within a reasonable time after discovering the termination of occupancy. Resident shall have the right to inspect Premises within five (5) business days after the termination of occupancy in order to ascertain the accuracy of the Move-Out Statement. If Resident is present with Landlord at the time of the inspection, Landlord and Resident shall sign the list, and this shall be conclusive evidence of the accuracy of the list. If Resident agrees with the Move-Out Statement, Resident shall sign the same. If Resident refuses to sign the Move-Out Statement, Resident shall specify in writing the items on the Move-Out Statement with which Resident disagrees within five (5) business days. For all purposes herein, a business day shall not include Saturday, Sunday, or federal holidays.

6. <u>Attorneys Fees, Court Costs and Costs of Collection</u>: Whenever monies due hereunder are collected by law or by attorney at law to prosecute such an action, then both parties agree that the prevailing party will be entitled to actual attorney's fees, plus all court costs and costs of collection.

7. <u>Month-to-Month Extension.</u> Resident may terminate this Lease at the end of the Lease Term only by giving Property Manager thirty (30) days' prior written notice of Resident's intent to vacate.  Landlord may terminate this Lease at the end of the Lease Term by giving Resident sixty (60) days' prior written notice or as otherwise permitted herein. If neither party gives the requisite termination notice, then this Lease will continue on a month-to-month basis for successive one (1)- month terms until either party gives the required



notice to terminate a month-to-month tenancy. This shall not constitute a renewal of the Lease for any longer term.

This State-Specific Addendum is incorporated into the Lease executed or renewed this day between Landlord and Resident.

© 2025 Progress Residential              Residential Lease (2025.v1)

Document digitally signed using RentCafe eSignature services. Document ID: 11237506

**SMART HOME SYSTEM SERVICE AGREEMENT**

This document will serve as an addendum and supplemental agreement (the "Addendum") regarding the attached Lease between Landlord and Resident for Premises located at **1456 Arbor Pl Dr Morrow, GA 30260**. Capitalized terms used in this Addendum have the meanings given to them in the Lease unless specifically defined in this Addendum. This Addendum is only applicable if there is a fee identified below.  If you see zero Dollars ($0) or "N/A" below, this Addendum does not apply.

The parties agree that the following provisions modify and supersede those found in the Lease:

The Premises is equipped with one or more smart home devices, which are hereinafter individually or collectively, as the case may be, the **"Smart Home System"**.  Depending on which Smart Home System is installed in the Premises, the Smart Home System gives Resident i) remote HVAC control via a mobile application; and/or ii) remote and keyless access capability; (iii) video monitoring; iv) or interior motion sensor (collectively, the **"Smart Home Service"**). To provide the Smart Home Service, the Premises contain various hardware and other Smart Home System components necessary to the operation, maintenance and functioning thereof, which may but will not necessarily include, the electronic lock system, digital thermostat, video doorbell, interior motion sensor, network connectivity box and other wiring and fixtures ("**Smart Home Hardware**").

1.  Term of Service. From and after the Effective Date, and until the expiration of the Lease Term and any renewal thereof (the **"Term"**), Landlord through its Smart Home vendor will make available the Smart Home Services via the Smart Home Hardware and Smart Home System.

2.  Pricing and Payment Terms.  Use of Smart Home Hardware and Smart Home System provided by Landlord pursuant to this Agreement is **19.99** per month (the **"System Package"**).  The System Package will be billed to Resident on a monthly basis, payable as Rent, until the Lease expires.

3.  Cessation of Services.  Smart Home Services may be suspended or stopped if (a) strikes, severe weather, earthquakes, pandemic, civil unrest or other such force majeure events beyond our control affect the operation of any of the Smart Home Hardware, servers or other Smart Home Services to the extent that continuing Smart Home Service would be impractical; (b) there is an interruption or unavailability of the telephone or internet service between the System; (c) any law, action or ruling by any governmental authority; or (d) in the event of non-payment of the System Package by the Resident. In the event of cancellation, Resident shall be liable to Landlord for the pro rata portion of the System Package for which Smart Home Services were utilized. In addition, Landlord reserves the right to substitute, add or discontinue use of some or all of the Smart Home Services, or any of the Smart Home Hardware used to provide the Smart Home Services, at any time and in Landlord's sole and absolute discretion.  Resident acknowledges that in the event Landlord elects to substitute, add or discontinue use of such Smart Home Hardware, certain functionality of the Smart Home System may become inoperable.



4.    Resident Duties. Notwithstanding anything to the contrary in the Lease, Resident agrees to maintain and keep in good care and condition all Smart Home Hardware. Resident may not: (a) remove any Smart Home Hardware; (b) disconnect any Smart Home Hardware from any power source or (c) interfere with the operation of any Smart Home Hardware or any other System functionality.  Resident acknowledges that all System Smart Home Hardware is and shall remain, during and after the term of the Lease, the sole property of Landlord, and Resident shall have no ownership thereof or right thereto except in connection with Resident's use of the Premises during the term of the Lease. Resident shall be solely responsible for the full cost of the Smart Home Hardware should Resident damage, uninstall or interfere with the Smart Home System, including all installation, service, and maintenance fees. Resident shall reimburse Landlord, immediately upon demand, for any amounts expended by Landlord in connection with Resident's default under this paragraph. Resident's failure to so reimburse Landlord within five (5) days of such demand shall constitute a default by Resident under the Lease, and Landlord shall thereafter be entitled to any and all remedies available to Landlord in connection with a Resident Default under the Lease.

5.    Consent to Receive Electronic Communications. If applicable, Resident hereby consents to receiving electronic and other forms of communication from Landlord or its Smart Home vendor regarding any of the Smart Home Services, the System Package, or anything else related to Landlord's provision of the requested Smart Home Services.

6.    Landlord and Property Manager will provide your name, email address, phone number, and dates of occupancy to our current Smart Home System service provider ("Smart Home System Service Provider").

7.    The Smart Home System installed in the Premises may be equipped with a video monitoring system. If you choose to activate your account, your use of the Smart Home System, including the video monitoring system, and provision of information to the System Service Provider will be governed by the System Service Provider's privacy policy, master services agreement and terms of use. We encourage you to carefully read these documents. Landlord reserves the right to change the Smart Home System Service Provider during the term of this Lease from time to time and in Landlord's sole discretion.

8.    No Landlord or Property Manager Liability. Neither Landlord nor Property Manager shall be liable to Resident for any claim whatsoever, including, but not limited to claims resulting from the failure or malfunction of the Smart Home Hardware or Smart Home System, any inability to access the Premises or use any other feature provided by the Smart Home Service, or any invasion of privacy, intrusion upon seclusion or trespass claim related to the placement of Smart Home Hardware on the Premises or the monitoring, capture, storage and or accidental dissemination of personal information or other data that may be stored by the Smart Home System.

9.    Release of Information. Landlord, Property Manager, and the Smart Home System Service Provider may have access to data from the Smart Home Services and Smart Home System, including frequency of usage and temperature information (the "System Data").  Resident agrees and



acknowledges that the System Data may be utilized by Landlord and Property Manager for research, property management, and other purposes.

10. Warranty Disclaimer. NEITHER LANDLORD NOR PROPERTY MANAGER MAKES A WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE. THE SMART HOME SERVICES ARE PROVIDED BY LANDLORD AND PROPERTY MANAGER "AS IS" AND "AS AVAILABLE." YOU ASSUME ALL RISK FOR YOUR USE OF THE SMART HOME SERVICES, INCLUDING WITHOUT LIMITATION, INABILITY TO ACCESS THE LEASED PREMISES, LOSS OR DAMAGE TO ANY PERSONAL PROPERTY AS A RESULT OF USING THE SMART HOME SERVICES OR PERSONAL INJURY OR ANY OTHER HARM. IN NO EVENT DOES LANDLORD GUARANTEE THAT THE SMART HOME SERVICES OR ANY PORTION THEREOF, ARE ACCURATE, ERROR OR BUG FREE, THAT YOUR USE OF THE SMART HOME SERVICES WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT THE SMART HOME SERVICE'S OPERATION WILL NOT NEGATIVELY AFFECT YOUR USE AND QUIET ENJOYMENT OF THE LEASED PREMISES. THIS PARAGRAPH APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

11. Limitation of Liability. IN NO EVENT WILL LANDLORD AND/OR ITS AFFILIATES, PROPERTY MANAGER, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES RELATED TO OR ARISING FROM YOUR USE, MISUSE, OR INABILITY TO USE THE SMART HOME SERVICES, INCLUDING BUT NOT LIMITED TO, DAMAGES TO PERSONAL OR REAL PROPERTY OF ANY NATURE WHATSOEVER, PERSONAL OR BODILY INJURY, INCREASED ENERGY OR TELECOMMUNICATIONS EXPENSES, ANY DAMAGES RESULTING FROM UNAUTHORIZED ACCESS TO OUR SERVERS, SERVER UNAVAILABILITY, AND ANY PERSONAL INFORMATION STORED THEREIN, HOWEVER CAUSED UNDER ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED, TO CONTRACT OR TORT ANDWHETHER OR NOT EITHER PARTYWAS OR SHOULD HAVE BEEN AWARE OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGE; (ii) FOR ANY CLAIM ATTRIBUTABLE TO ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE SMART HOME SERVICES OR DESTRUCTIVE PROPERTIES OF THE SMART HOME SERVICE, AND (iii) FOR ANY CLAIM RESULTING FROM YOUR NON-COMPLIANCE WITH OR BREACH OF THE TERMS HEREOF OR ANY APPLICABLE TERMS OF SMART HOME SERVICE FOUND ONLINE OR ANY OTHER STATE OR FEDERAL LAWS. IN NO EVENT SHALL LANDLORD'S AGGREGATE LIABILITY UNDER THIS AGREEMENT EXCEED THE TOTAL SUM OF MONIES PAID FROM YOU TO US AS CONSIDERATION FOR USE OF THE SMART HOME SERVICES DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY.

12. Indemnification. THE UNDERSIGNED RESIDENT(S) HEREBY AGREE, AT YOUR EXPENSE, TO INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, ITS PROPERTY MANAGER, AFFILIATES, LICENSORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ALL DEMANDS, LIABILITIES, LOSSES, CLAIMS AND EXPENSES, INCLUDING ATTORNEY'S FEES, ARISING OUT OF (i) YOUR USE OF THE SMART HOME SERVICES, (ii) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS OF INFRINGEMENT BASED ON INFORMATION, DATA OR CONTENT YOU SUBMITTED IN CONNECTION WITH THE SMART HOME SERVICES, (iii) ANY FRAUD OR MANIPULATION, OR OTHER BREACH OF THIS AGREEMENT, BY YOU, (iv) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS BROUGHT AGAINST US ARISING OUT OF YOUR USE OF THE SMART HOME SERVICES, SMART HOMESYSTEM OR THE SMART HOME HARDWARE, OR (v) FOR ANY CLAIM



Document digitally signed using RentCafe eSignature services. Document ID: 11237506

WHATSOEVER RESULTING FROM YOU OR YOUR AFFILIATES', EMPLOYEES', CONTRACTORS' OR AGENTS' BREACH OF THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT OR ANY OTHER STATE OR FEDERAL PRIVACY OR ELECTRONIC PRIVACY LAWS. LANDLORD RESERVES THE RIGHT, AT ITS OWN EXPENSE AND IN ITS SOLE DISCRETION, TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT TO INDEMNIFICATION BY YOU.

Except as provided in this Addendum, all terms of the Lease will remain unchanged.

This Addendum is incorporated into the Lease executed this day between Landlord and Resident.



## Document Information

Document Reference Number: 11237506

| Document Pages: 47 | Signatures: 7 Initials: 28 | Status: Completed |

| Signature Summary | Signature | Initials | Timestamp | Signing Status |
|---|---|---|---|---|
| Erica Crawford | *[signature]* | *[EC]* | 06/16/2025 09:18:09 AM EST | Completed |
| Document Started: Email Address: | 06/16/2025 09:07:56 AM EST crawfordberica@gmail.com | | | |
| Skylar Bass | *[signature]* | *[SB]* | 06/16/2025 09:20:43 AM EST | Completed |
| Document Started: Email Address: | 06/16/2025 09:19:17 AM EST skylarbass@icloud.com | | | |
| Mohammed Zafrulla | *[signature]* | *[MZ]* | 06/16/2025 10:47:34 AM EST | Completed |
| Document Started: Email Address: | mzafrulla@progressresidential.com | | | |

| Signature Details | Page | Signature/Initials | Signing Status | Tracking Details |
|---|---|---|---|---|
| Erica Crawford | 2 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:21:51 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 4 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:07 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 6 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:18 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 21 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:25 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 22 | *[signature]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:28 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 23 | *[signature]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:33 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 26 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:36 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 27 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:46 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 28 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:52 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 30 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:57 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 32 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:01 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 33 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:03 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 35 | *[EC]* | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:06 AM EST User Agent: Safari on iPhone |

| Erica Crawford | 37 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:09 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 37 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:10 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 39 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:21 AM EST User Agent: Safari on iPhone |
| Erica Crawford | 40 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:26 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 2 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:21:24 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 4 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:21:41 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 6 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:21:56 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 21 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:23 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 22 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:26 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 23 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:30 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 26 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:35 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 27 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:39 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 28 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:42 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 30 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:22:55 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 32 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:00 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 33 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:01 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 35 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:04 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 37 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:07 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 37 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:10 AM EST User Agent: Safari on iPhone |
| Skylar Bass | 39 | | Completed | IP Address: 50.168.242.154 Timestamp: 06/16/2025 09:23:14 AM EST User Agent: Safari on iPhone |

| | | | | |
|---|---|---|---|---|
| Skylar Bass | 40 | | Completed | IP Address: 50.168.242.154<br>Timestamp: 06/16/2025 09:23:17 AM EST<br>User Agent: Safari on iPhone |
| Mohammed Zafrulla | 36 | | Completed | IP Address: 10.252.95.100<br>Timestamp: 06/16/2025 10:47:34 AM EST<br>UserAgent: Bulk Countersign |